CONTINENTAL IMPROVEMENT COMPANY *v.* STEAD.

1. Travellers upon a common highway which crosses a railroad upon the same level, and the railroad company running a train, have mutual and reciprocal duties and obligations; and, although the train has the right of way, the same degree of care and diligence in avoiding a collision is required from each of them.

2. That right does not, therefore, impose upon such a traveller the whole duty of avoiding a collision, but is accompanied with and conditioned upon the duty of the train to give due and timely warning of its approach.

3. The degree of diligence to be used on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty.

4. It belongs to the judge to exercise discretion as to the style and form in which he expounds the law and comments upon the facts. His duty is discharged if his instructions to the jury correctly state, although not in the *ipsissima verba* of counsel, the whole law applicable to the case.

ERROR to the Circuit Court of the United States for the District of Indiana.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Messrs. Hughes, O'Brien, & Smiley* for the plaintiff in error, and by *Mr. J. J. Coombs*, contra.

Mr. Justice Bradley delivered the opinion of the court. ·

This is a case of collision near the village of Lima, in La Grange County, Indiana, between a train of passenger cars of the plaintiff in error and the wagon of the defendant in error. The latter brought the action below to recover the damages done to himself and his wagon, and recovered a verdict. The present writ of error is brought to review the instructions given by the court to the jury, on the trial. The case, as appears by the bill of exceptions, was substantially as follows: The collision occurred in a cut about five feet in depth, in which the wagon-road crossed the railroad on a level therewith nearly at right angles, descending to it on each side by an excavation. The train was a special one, coming from the north, and did not stop at the station, which was four hundred or five hundred feet north of the crossing, and none of the regular trains were due at that time, although special trains were occasionally run over the road. The plaintiff was going east, away from the village, following another wagon, and in approaching the railroad track could not see a train coming from the north, by reason of the cut and intervening obstructions. There was evidence tending to show that the plaintiff, though he looked to the southward (from which direction the next regular train was to come), did not look northwardly; that his wagon produced much noise as it moved over the frozen ground; that his hearing was somewhat impaired; and that he did not stop before attempting to cross the track; also, evidence tending to show that the engineer in charge of the train used all efforts in his power to stop it after he saw the plaintiff's wagon on the track. The evidence was conflicting as to whether the customary and proper signals were given by those in charge of the locomotive, and as to the rate of speed the train was running at the time, some witnesses testifying that it was at an unusual and improper rate, and others the contrary.

The counsel for the railroad company requested the court to

adopt certain specific instructions, to the general effect that the plaintiff should have looked out for the train, and was chargeable with negligence in not having done so; that there was nothing peculiar in the crossing to forbid as high a rate of speed as would be proper in the case of other important highways; that an engineer is not bound to look to the right or left, but only ahead on the line of the railway, and has a right to expect that persons and teams will keep out of the way of the locomotive; and that it is the duty of those crossing the railroad to listen and look both ways along the railroad before going on it, and to ascertain whether a train is approaching or not.

The judge refused to adopt the instructions framed by counsel, but charged, in effect, as follows: that both parties were bound to exercise such care as, under ordinary circumstances, would avoid danger; such care as men of common prudence and intelligence would ordinarily use under like circumstances; that the amount of care required depended on the risk of danger; that, where the view was obstructed so that parties crossing the railroad could not see an approaching train, the exercise of greater care and caution was required on both sides; as well on the part of those having the management of the train as of those crossing the railroad; that the former should approach the crossing at a less rate of speed, and use increased diligence to give warning of their approach; and, if the train was a special one, it was still more incumbent upon them in going through such a place to slacken their speed and sound the whistle and ring the bell, than if the train were running on regular time; and, on the other hand, that the party crossing with a team should proceed with more caution and circumspection than if the crossing were in an open country, and not venture upon the track without ascertaining that no train was approaching, or at least without using the means that common prudence would dictate to ascertain such fact; but that, if a train were not a regular one, no train being due at the time, the same degree of caution would not be expected on his part as if it were a regular train and on usual time. In short, the judge charged that the obligations, rights, and duties of railroads and travellers upon highways crossing them are mutual and reciprocal, and no greater degree of care is required of the one

than of the other.   He further charged, that the plaintiff could not have a verdict unless the persons in charge of the train were guilty of negligence or want of due care, and unless the plaintiff himself were free from any negligence or carelessness which contributed to the injury.  · The evidence of the case was fairly submitted to the jury in the light of the principles thus announced.

This is the general scope of the charge; and we think it is in accordance wiᴛh well-settled law and with good sense.  If a railroad crosses a common road on the same level, those travelling on either have a legal right to pass over the point of crossing, and to require due care on the part of those travelling on the other, to avoid a collision.   Of course, these mutual rights have respect to other relative rights subsisting between the parties.  From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first: it is the duty of the wagon to wait for the train.   The train has the preference and right of way.   But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way.   Such warning must be reasonable and timely.  But what is reasonable and timely warning may depend on many circumstances.   It cannot be such, if the speed of the train be so great as to render it unavailing.   The explosion of a cannon may be said to be a warning of the coming shot; but the velocity of the latter generally outstrips the warning.   The speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell; and this caution is especially applicable when their sound is obstructed by winds and other noises, and when intervening objects prevent those who are approaching the railroad from seeing a coming train.· In such · cases, if an unslackened speed is desirable, watchmen should be stationed at the crossing.

On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching.   They have, indeed, the greatest incentives to caution, for their lives are in imminent danger .

if collision happen; and hence it will not be presumed, without evidence, that they do not exercise proper care in a particular case. But notwithstanding the hazard, the infirmity of the human mind in ordinary men is such that they often do manifest a degree of negligence and temerity entirely inconsistent with the care and prudence which is required of them, — such, namely, as an ordinarily prudent man would exercise under the circumstances. When such is the case, they cannot obtain reparation for their injuries, even though the railroad company be in fault. They are the authors of their own misfortune. These propositions are so indisputable, that they need no reference to authorities to support them. We think the judge was perfectly right, therefore, in holding that the obligations, rights, and duties of railroads and travellers upon intersecting highways are mutual and reciprocal, and that no greater degree of care is required of the one than of the other. For, conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with, and conditioned upon, the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition. Both parties are charged with the mutual duty of keeping a careful lookout for danger; and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty. The charge of the judge was in substantial accordance with these views.

The mistake of the defendant's counsel consists in seeking to impose upon the wagon too exclusively the duty of avoiding collision, and to relieve the train too entirely from responsibility in the matter. Railway companies cannot expect this immunity so long as their tracks cross the highways of the country upon the same level. The people have the same right to travel on the ordinary highways as the railway companies have to run trains on the railroads.

Perhaps some of the abstract propositions of the defendant's counsel contained in the instructions asked for, based on the

facts assumed therein, if such facts were conceded, or found in a special verdict, would be technically correct.   But a judge is not bound to charge upon assumed facts in the *ipsissima verba* of counsel, nor to give categorical answers to a juridical catechism based on such assumption.  Such a course would often mislead the jury instead of enlightening them, and is calculated rather to involve the case in the meshes of technicality, than to promote the ends of law and justice.   It belongs to the judicial office to exercise discretion as to the style and form in which to expound the law and comment upon the facts.   If a judge states the law incorrectly, or refuses to state it at all, on a point material to the issue, the party aggrieved will be entitled to a new trial.   But when he explains the whole law applicable to the case in hand, as we think was done in this case, he cannot be called upon to express it in the categorical form, based upon assumed facts, which counsel choose to present to him.   See *Mills* v. *Smith*, 8 Wall. 27; *Nudd* v. *Burrows*, 91 U. S. 426.

An examination of some of the principal instructions asked for by the defendant's counsel will furnish an illustration of the propriety of these views.   The court was asked to instruct the jury as follows: —

" The uncontradicted testimony in this case shows that the plaintiff was acquainted with the character of this crossing; that he had frequently travelled it, and on some previous occasions had stopped to look and listen before going upon the track; that upon this occasion he went with his team and wagon upon the track without taking any precaution to ascertain whether a train was coming from the north or not; that he did not even turn his face northward along the track in the direction from which the train was coming until it was too late for him to stop or turn back; that his wagon was making considerable noise as it moved over the frozen ground; that his hearing was to some extent impaired, but he did not stop to listen before going upon the track.

" Upon this state of facts the plaintiff is chargeable with such negligence contributing to the accident as deprives him of any right of action."

Now, although the case may have been so clear of other evidence than that stated in the proposed instruction, as that the judge (had he seen fit) might have adopted it as a statement

of the ultimate facts, yet he was not bound to do so, but was entirely justifiable in stating the law, as he did, in a more general form, namely : —

"It is left as a question of fact for you [the jury] to say whether he [the plaintiff] was guilty of carelessness from the evidence. He was required to exercise that degree of prudence, care, and caution incumbent upon a person possessing ordinary reason and intelligence under the special circumstances of the case, having regard to the particular character of the crossing and the difficulty of seeing a train approaching from the north. The fact that his hearing was somewhat impaired would not exempt him from the necessity of using the care required of persons in possession of their ordinary senses or faculties. A person suffering under such an infirmity should use more diligently his other faculties. If the place was dangerous and the approach to it by a train obscured, he should have proceeded with more caution and circumspection than if the crossing were in an open country ; and not ventured upon the track without ascertaining that no train was approaching, or at least without the use of the means that common prudence would dictate to ascertain such fact. But as this was not a regular train, or on usual time, the same degree of caution would not be required on his part or such as if it were a regular train and on usual time."

And further on : —

"It is shown by the evidence, and not disputed, that plaintiff was accustomed to pass this crossing, and may be presumed to know and be acquainted with the usual rate of speed with which the trains passed this crossing, and, if this train was not moving at a greater rate, he should be held as bound to exercise such care and caution as to avoid collision with such trains moving at usual rates and times ; so that, unless you find that the train was moving at an unusual and unreasonable rate of speed, you would be warranted in finding the plaintiff was guilty of negligence which contributed to the injury, and hence not entitled to recover."

The facts assumed in the instruction proposed depended on the evidence, and did not by any means comprise all the facts bearing upon the question ; and, aside from the discretion which, as we have stated, may be exercised by the judge, we think he did quite right in this instance, after stating the law to the jury, in submitting the evidence to their consideration.

Another instruction asked for was as follows : —

"It is the duty of every one approaching with his wagon and team along a highway to the crossing of a steam railroad to listen and to look both ways along the railroad before going upon it. If by reason of the character of the ground or other obstructions, or if by reason of a defect in his sense of sight or of hearing, he cannot determine with certainty whether or not a train of cars is approaching without stopping, and, if necessary, going in advance of his team to examine, it is his duty to do so. If in such case he goes upon the track without taking such precaution, he does so at his own peril, and cannot recover if injury results."

Here is no assumption of facts as in the previous instruction ; but it states the duty of persons approaching a railroad with wagons and teams in a more absolute and unqualified form than we think admissible. It states such duty with the rigidity of a statute, making no allowance for modifying circumstances or for accidental diversion of the attention, to which the most prudent and careful are sometimes subject; and assuming, in effect, that the duty of avoiding collision lies wholly, or nearly so, on one side. We think that the qualified form in which the duty of travellers, on highways in approaching a railroad was stated by the judge in his charge, as applicable to the evidence and circumstances of this case, was all that could be justly required by the defendants.          *Judgment affirmed.*