Barker, J.
—The deceased received the injuries which caused his death while crossing the defendant’s tracks laid across Austin street'in the city of Buffalo. The crossing is at grade. At this place the railroad tracks run north and south, and they cross Austin street at a slight angle, but, for convenience, the course of the street will be mentioned herein as east and west. The deceased was riding along in a one-horse wagon on Austin street, going east towards the crossing, and the defendant’s passenger train, with which he came in collision, was running north. Parallel to each other and all of them crossing Austin street are twelve or more tracks, of which six or seven are to the west of the one on which the defendant’s train was moving, and some of them are owned and used by other railroad companies.
On several of the tracks lying to the west of the defendant’s track, there were standing on the south side of Austin street several lines of freight cars, some of them being box cars; all were so located as to obstruct for a considerable distance the view of an approaching train from the south to a person approaching the Austin street cross *587 ing from the west. A portion of the smoke stack and about one foot of the upper part of the passenger cars could be observed by a person standing to the_ west of the tracks and watching the movement of the train. The evidence tended to show that the standing cars occupied a portion of both sides of the street, so that the space left open for teams to cross the track was only from twelve to fifteen feet wide. The rate of speed at which the train approached the crossing was in dispute, but from all the evidence the jury was justified in reaching the conclusion, that the same was not less than twenty-five miles an hour. The deceased was driving his horse on a slow trot, about four miles an hour, and he did not stop his horse before he attempted to cross the tracks. No flagman was stationed at the crossing at the time of the accident, nor had one been kept there by any of the companies whose tracks crossed Austin street. The defendant moved for a non-suit which was deniéd and an exception taken. At the close of the evidence the defendant moved that a verdict be directed in its favor which the court refused and the defendant again excepted. The defendant on this appeal contends, that the exceptions were both well taken for the reason, that the plaintiff failed to establish any negligence on the part of its men and servants in charge of the train which caused the collision and from all the evidence it appeared that the deceased was guilty of contributory negligence.
It was the duty of the defendant, in operating its railroad in some manner, to give notice of the approach of its trains, so that citizens, who were travelling upon the streets and about to cross its tracks, could avoid a collision by stopping in a place of safety until the train had passed. Dyer v. Erie Railway Co., 71 N. Y., 228.
The degree of care to be exercised on the part of railroads is not capable of exact definition and depends upon all the circumstances of the case. It may be said, however, that in every case where the crossing is at grade, and upon which there is considerable travel, it is their duty to use a high degree of vigilance. And nothing less will secure to the public, safety in the use of streets intersected by their tracks. If this rule be faithfully observed and travelers on the highway are attentive in watching for approaching trains, serious accidents will seldom happen. But the rule which imposes the obligation of care and prudence on the part of the railroad and measures its liability to others ha-: ble to receive injury from moving cars and locomotives, does not call for the performance of any act outside of or disconnected with the actual operation of the railroad on the part of the company and in the use of its railroad. Weber v. N. Y. C. and H. R. R. Co., 58 N. Y., 451
*588 ‘ In the case before us the evidence tended to show that the men in charge of the train did nothing to warn the deceased of its approach to the crossing, und the only notice that he had that a train was coming was the noise caused-by its movement.' The whistle was blown once, so that the same could be heard for a long distance, but that was near a station half a mile away from the crossing. Was the bell rung? The engineer- and fireman who had the train in charge both testified that it was. The plaintiff contends that it was not, and gave evidence on the subject. Eva Root, who, at the time of the accident was riding in Tonawanda street, some five hundred feet from the crossing, and who saw the train moving in that direction, and also noticed that the deceased was driving along Austin street, and had nearly reached the tracks, says: That she observed the train when it crossed Amherst street, and “ watched ” for the bell, and it was not rung. Another witness, who stood in his door yard, not far from where Mrs. Root was driving at the time of thé collision, testified that he observed the train and the rate of speed which it was moving; that between him and the tracks the ground was level, and there was nothing to obstruct a full view of the train, except the standing cars, and that he saw the train and heard the whistle blow when it was at the head of Tonawanda street, a point some ten or twelve hundred feet east of the crossing; that he saw the deceased drive along Austin street at the same time that he witnessed the collision, and he says that he did not hear any bell from the time he first saw the train. A witness called by the defendant, whose relative position to the crossing was not definitely shown by the evidence, stated that he saw the train and heard the whistle blow and the bell sounded as it came up to the crossing.
Upon the question whether the bell was rung or not, I think a Case was clearly made for the jury, within the rules as now established, that as against positive affirmative evidence by credible witnesses to the ringing of the bell or the sounding of a whistle, there must be something more than the testimony of one or more that they did not hear it, to authorize the submission of the question to the decision of a jury. It must appear that the witnesses were looking, watching and listening for the ringing of a bell, or that their attention was attracted to the fact, so that their evidence would tend to prove the negative, and thus produce a conflict in the evidence, and make a case justifying the submission of the question to the jury as one of fact. Culhane v. N. Y. Central and H. R. Railroad Co., 60 N. Y., 133.
The evidence produced by the plaintiff made a case tend *589 ing to prove that the bell was not rung as strong as that produced in McCallum v. Long Island Railroad Co (38 Hun, 569), whereit was held that it was sufficient to make a case for the consideration of the jury. If the bell was not rung, then the train crossed the street without giving any signal of its approach.
In view of the obstruction caused by the standing cars, and the rate of speed at which the train was run, it was a fair and reasonable deduction for the jury to make that the train was not run with due and proper caution, and that the collision was the result of the defendant’s negligence. If, however, the bell was not rung, that circumstance alone did not establish a case against the defendant, entitling the plaintiff to recover, for the reason that the street crossing was within the limits of the city, and the statutory requirement in that respect has no application. The omission to ring the bell, if such was the fact, was simply a circumstance bearing on the general question, did the defendant use that degree of care and caution which the law exacted from the defendant under the circumstances? But if the bell was rung, as the defendant contends, then it was not a case for granting a non-suit or ordering a verdict for the defendant. The obstructions were of such a character as to limit the opportunity of the deceased to observe the train as it neared the crossing, and the ringing of the bell would not, as a matter of law, exempt the defendant from the imputation of negligence.
If the rate of speed was as great as stated by the plaintiff’s witnesses, then it may be said that the defendant did not fully discharge its duty to the public and the deceased by simply ringing the hell as the means of giving notice of its approach to the crossing. Not that the rate of speed was, in and of itself, negligence, but that the rate of speed was so rapid as to make the notice which was given, by ringing of the bell, of no avail. Haycroft v. L. S. and M. S. R. R. Co., 2 Week. Dig., 155; Continental Imp. Co. v. Stead, 95 U. S., 161; Cordell v. N. Y. C. R. R. Co., 70 N. Y., 119; Weber v. N. Y. C. R. R. Co., supra.
The obstructions and the rate of speed were elements for the consideration of the jury in determining the question of the defendant’s negligence.
The defendant also contends that- the trial court should have ruled, as matter of law, that the deceased was guilty of contributory negligence. A witness testified that she observed that as he passed on to the track, between the standing cars, he looked both ways.
This evidence, together with the obstructions which intercepted a full view of the approaching train, made it a clear case for the jury, and not one for the court, to pass *590 on the question of contributory negligence. Although the defendant was not guilty of placing the standing cars so as to obstruct the view of its own train, it is manifest that the men in charge of the same were fully informed of the situation and they were called upon to observe that fact in running and operating the train.
The defendant proved that the deceased drank several glasses of beer shortly before he started to drive across the track.
The saloon keeper who sold the beer was called by the defendant to prove that fact, and, on his cross-examination, the plaintiff’s counsel asked the question: What vias his (the deceased’s) condition as to “sobriety?” No objection was interposed and the witness answered: “I think he knew enough to take care of himself.” He was not drunk. “I think so.” The defendant then objected to' this answer being received, and asked to have the same stricken out, which request was overruled and the defendant excepted. The question was proper, and so much of the answer as stated, that the deceased was not drunk, was responsive to the inquiry and was also competent. The rest of the answer was a voluntary statement , and was clearly incompetent. If the motion to strike out had been limited to this part of the answer, it should have been granted; but as the request asked to have all the answer rejected it was properly denied.
Judgment affirmed.
Smith, P. J., Haight and Bradley, JJ., concur.