Mr. Justice Hagner
delivered the opinion of the Court:
This action was brought to recover damages for injuries sustained by the female plaintiff, from, a collision on the *234 defendant’s road, in May, 1884, at Sheriff’s Crossing, where the Anacostia City road crosses the railroad. She was driving home from the Washington market in a wagon drawn by one horse; and in attempting to pass over the track the horse was struck and killed by a freight train coming from Washington, the wagon destroyed, and the plaintiff thrown out and severely injured. The plaintiffs charged negligence against the defendant company, which, in turn, ascribed the collision to contributory negligence on the part of the female plaintiff. The jury found a verdict of $1,500 against the company; and the case comes before us upon numerous exceptions to the rulings below.
The first, relating to the admissibility of the testimony therein stated, was abandoned in the argument.
The Court was undoubtedly right in refusing to instruct the jury to return a verdict for the defendant, upon the evidence embraced in the second exception. That exception presented a case proper to be submitted to the jury, whose special function it was to pass upon the credibility of the plaintiff and the alleged unreasonableness of her testimony, in the particulars therein pointed out by the defendant’s counsel. It was insisted that her statement that she both looked and' listened carefully for the coming train before venturing to cross the track, must necessarily be false; because one listening, as she testified she did, must have heard the sounds inseparable from its movements. But this contention, besides repudiating the positive statement of the plaintiff, required the Court to ignore all the evidence by other witnesses also tending to show that no signal wras given by the whistle as the train approached the crossing; and (in contradiction of the engineer’s statement) that the bell was not rung; so that the plaintiff could have had no warning from those sources not to drive up the short hill or incline, which immediately brought her on one of the tracks; together with their further testimony, that she stopped at the foot of the hill as if to listen; and that the *235 entire route up the incline was then so hedged in by trees and brushes that it was impossible, from any part of it, to see the track until the top of the embankment was reached; and naturally, that these obstructions would also tend to deaden the noise of the approaching train.
If this testimony correctly represented the condition of affairs, it would have been an undue assumption on the part of the trial justice to decide that the plaintiff’s statement referred to was necessarily so inherently false that it shopld be stricken out of the case.
The exceptions, three to twelve inclusive, were taken to the refusal of the Court to grant ten prayers offered by the defendant. The justice, in refusing these instructions, together with all asked on behalf of the plaintiffs, expressed his purpose to embrace the points presented by the several prayers in his charge to the jury, which is given at length in the record — particular portions of which are made the subject of a distinct exception on the part of defendant. Of the authority of the justice to adopt this course there can be no question, nor of its eminent propriety where a multitude of prayers presenting often only shades of difference, and directed to material points, are addressed to the Court. To grant them all, although they might be correct as abstract propositions, would frequently tend to confuse rather thaii enlighten the jury in the performance of their duty.
If the charge contained all the pqints which were correctly presented by the prayers, their rejection' was not error.
The prayers in exceptions three, two and six are predicated of the the theory that the plaintiff, Isabella, at the time of the injury, “was riding in a covered wagon, closed up on both sides.” We think the justice was right in refusing these instructions as not supported by the evidence, since all the proof showed that the curtains were rolled up on each side of her seat so as to enable her to see all about her. As the plaintiff expressed it, “ I almost might as well *236 have been on the top of the wagon. I could have seen just as well.”
The first, fourth, fifth, eighth and ninth prayers were designed to present to the jury in different forms the effect of alleged contributory negligence of the plaintiff upon her right to recover.
We think the subject was fully presented by the charge of the justice below, in which he embodied extracts from the very careful opinion delivered by Mr. Justice Bradley in Continental Improvement Co. vs. Stead, 95 U. S., 161, where the law is laid down with great discrimination and clearness. So far as the defendant’s propositions were correct, they were covered by the charge; so far as they were wrong, they were properly refused.
The second prayer calls attention to a theory advanced by the defense that the horse may have become unmanageable, and while thus beyond the driver’s control attempted to run across the track, and in this way came in collision with the engine. But it omitted all consideration of the defendant’s negligence which might have rendered it liable even if the supposal of the prayer were established, since the negligence of one party does not exonerate the other who is aware of such negligence from an effort to avoid an accident. And if it were true, as insisted by the plaintiff, that the train was traveling at a rapid rate on a down grade, that no proper notice of approach was given, and its employees, seeing the wagon’s movements, made no proper effort to avoid a collision at the crossing, then the running off of the horse would not have excused their own negligence.
But the Court virtually gave the instruction with proper qualifications in these words: “If the horse was entirely beyond her control, and ran upon the tracks before the engineer could avoid a collision, that would be a mere casualty for which neither party would be responsible.”
The tenth prayer requested the Court to say: If the jury *237 was satisfied that the plaintiff was prevented by the noise of her wagon from hearing the noise of the approaching train, as well as she otherwise might have done, the plaintiff could not recover. We have examined the evidence in vain to discover any testimony to support this prayer. The only evidence at all germane to the subject involved would appear to be in contradiction of the theory. The wagon was moving along a sandy road, drawn by an old lame mare, heavy with foal, and the vehicle under these conditions was very little calculated to create such a noise as to prevent the driver from hearing the proper signals and noise of an approaching train before she attempted to cross the track.
The eleventh prayer asked the Court to declare: “If the jury shall be satisfied from the evidence that the engineer blew the whistle of his engine, at or near Benning’s Station, and that he rang the bell when approaching the crossing in question, there can be no recovery by the plaintiff, and the verdict must be for the defendant.”
The Supreme Court in 95 U. S., 164, before referred to, uses this apt language, which the trial justice read as part of his charge:
“If a railroad crosses a common road on the same level, those traveling on either have a legal right to pass over the point of crossing, and to require due care on the part of those traveling on the other, to avoid a collision. Of course, these mutual rights have respect to other relative rights subsisting between the parties. From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first; it is the duty of the wagon to wait for the train. The train has the preference and the right of way. But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably *238 in the way. Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances. It cannot be such, if the speed of the train be so great as to render it unavailing. The explosion of a cannon may be a warning of the coming shot; but the velocity of the latter generally outstrips the warning. The speed of a train at' a crossing should not be so great as to render unavailing a warning of its whistle and bell; and this caution is especially applicable when their sound is obstructed by winds and other noises, and when intervening objects prevent those who are approaching the railroad from seeing a coming train. In such cases, if an unslackened speed is desirable, watchmen should be stationed at the crossing.
“On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if collision happen; and hence it will not be presumed, without evidence, that they do not exercise proper care in a particular case. But notwithstanding the hazard, the infirmity of the human mind in ordinary men is such that they often do manifest a degree of negligence and temerity entirely inconsistent with the care and prudence which is required of' them, such, namely, as an ordinarily prudent man would exercise under the circumstances. When such is the case, they cannot obtain reparation for their injuries, even though the railroad company be in fault. They are the author’s of their own misfortune. These propositions are so indisputable that they need no reference to authorities to support them.”
The justice below also distinctly told the jury that the question whether the proper signals were given was for them to decide. It would have been improjier for the Court to have said in the words of the prayer, that the fact of “ the blowing of the whistle at or near Benning’s Station ” (the *239 only proof on the subject being that it was blown 500 yards before reaching Benning’s), and “the ringing of the bell when• approaching the crossing” (without indicating at what distance) would, of themselves, if established, defeat the plaintiff’s right to recovery. Whether the notice, if given, was adequate and timely, and whether the engineer might have avoided the collision, were considerations proper to be weighed by the jury in connection with the items thus segregated in the prayer; and we think in the form asked its refusal was not error, even if the point had not been effectively covered by the charge of the Court.
The twelfth prayer asked the court to say, “as matter of law, that the fact (if it be a fact) that Large did not interfere with Mrs. Johnson, and notify her that a train was coming, cannot be considered as going to establish the responsibility of the defendant.”
The only testimony on this subject was derived from Large himself, who, while admitting that he did not notify Mrs. Johnson that the train was coming, also said he was walking on the track when he discovered the approach of the train; that he had left Mrs. Johnson on the hillside; and that it would have been impossible for him to have given her warning before the train would have reached her; and further, that it was no part of his duty, as telegraph operator at Benning’s, to warn people on Sheriff’s Crossing of the approach of trains. That he ought morally to have taken pains to try his very best to give such notice if he knew or thought any person stood in need of warning is evident; but that his omission, under the circumstances stated by him, should not be imputed to- the defendant company, would seem equally clear.
We cannot think the jury required any instruction that they ought to disregard testimony which had not been delivered before them. No witness had spoken at all of Large “interfering” with the plaintiff, and there was no evidence upon which to base the prayer. It was one of that *240 class of prayers condemned repeatedly by the courts, as having a tendency to confuse instead of assisting the jury.
The next exception is to the charge itself. First: It is contended that the justice erred in reading to the jury as part of the charge, extracts from the decision of the Supreme Court in 95 U. S. 164 before referred to. This Court has expressly decided that a judge may properly read sections from a text book as part of his charge; U. S. vs. Neverson, 1 Mackey, 152; and it has approved charges containing extracts read by the judge from decisions or text books — as in Gleeson vs. Virginia Midland R. R. Co. 5 Mackey, 356.
The propriety of this course must of course depend upon the correctness and appositeness of what is thus read ; but it is difficult to understand why a judge may state his recollection of the law, and be forbidden to read the actual text of the principle he may be referring to, and thus insure perfect correctness of statement.
But it is insisted here that the decision of the Supreme Court was made in a case where the injury resulted from an extra or irregular train, and where the wagon road crossed the track on the same level; and was therefore inapplicable to the case on trial, as the collision here occurred with a regular train and at a locality where the country road crossed the track after climbing an ascent. But a careful examination of that decision shows that the Supreme Court granted with approval the instruction of the circuit judge below in that case, Continental Improvement Co. vs. Stead, 95 U. S. 163 which said: “If the train was a special one, it was still more incumbent upon them in going through such a place to slacken their speed and sound the whistle and ring the bell, than if the train were running on regular time; and, on the other hand, that the party crossing with a team'should proceed with more caution and circumspection than if the crossing were in an open country, and not venture upon the track without ascertain *241 ing that no train was approaching, or at least without using the means that common prudence would dictate to ascertain such fact; but that, if a train were not a regular one, no train being due at the time, the samé degree of caution would not be expected on his part as if 'it were a regular train and on usual time.”
So that it would seen! the difference between the cases resulted in a discrimination rather advantageous than injurious to the defendant.
The Court properly told the jury that one of the questions for their' decision was ■whether the crossing there was in a dangerous condition. This was directly involved in the inquiry ■whether the defendant was guilty of negligence. If it be true, as insisted by the defendant’s counsel, that all railroad crossings are dangerous, and hence it was improper to present to the jury any question as to the danger, of this crossing ; then again it is to be remarked that the defendant was benefitted by this language of the charge; for it left to the jury the determination of a question which otherwise, according to this contention, would necessarily have been assumed against the defendant.
The next objection relates to the correctness of the direction of the Court upon the question of damages. The Court used this language: “ I am requested further to instruct you as to the measure of damages in case you find that the plaintiff is entitled to recover anything. I do instruct you, as requested, that in estimating the damages the suffering of the plaintiff may be considered, and you may allow such damages as would compensate her for her suffering and for the effect of the injuries which you are satisfied will be permanent, and for the sufferings that must necessarily result, in the future, from the injuries; so that she will be fully compensated for all the consequences of accident.”
It is insisted that the words “ and for the effect of the injuries which you are satisfied will be permanent,” describe *242 a class of injuries that could be recovered in a separate action by her husband alone; because they could only diminish the value of the wife’s personal services in the future, which belong exclusively to her husband.
But if this would be the proper construction of the words standing alone, yet in connection with the rest of the sentence it is plain the justice was referring only to the effect of permanent injuries upon the wife alone, and the suffering to her from such injuries in the matter; and that he meant to say it was for such suffering, either past or necessarily to come, that she should be compensated. The cases cited* by the defendant’s counsel in support of his objection were decided under special state statutes which prevent their general application.
In Scott vs. Metropolitan Railroad Company, 4 Mackey, 153, the Court below had previously warned the jury that the plaintiff could not recover anything as damages or compensation for the loss of services of the wife to the husband (which was omitted in the present case); but the General Term held that it was error in the Court to say further that they might recovei for such inj ury continuing to the time of the trial “so as to diminish her physical strength or ability to perform or transact her necessary affairs and business,” as the evidence showed she was a washerwoman by occupation, and her savings as such belonged to her husband; and that the jury might therefore have been misled by the instructions as thus given. In the present case, also, it was proved that the wife worked on a market garden farm, and took the crops to market and sold them there.
But we think there is great good sense in the language of the Court in Minick vs. Troy, 19 Hun, 253, where it was held that in an action by a married woman, she may recover for such loss of services as she herself sustained towards herself; and that there remain to a married woman many duties, privileges and services personal to herself, *243 which are proper subjects for the consideration of the jury, in connection with the suffering endured, in determining the damages to be awarded.to her. See 3 Sutherland, Damages, 729, note.
The testimony here shows that among other injuries sustained-by the female plaintiff, her jaw bone was broken and ten teeth knocked out, so that she has not been able since to masticate solid food; and her shoulder was so injured that she has not been able since to dress herself, without assistance. This testimony shows a loss of service “ sustained by herself, and towards herself,” which might properly be the subject of recovery by the wife. It would be ascribing to the jury too dense a capacity for being misled, to conclude that they supposed the Court told them to include in their verdict compensation to the husband for his loss of the labor and services of his wife, belonging to him alone, when they had been told throughout that it was she who was to be compensated and for her suffering from the accident. Nor is there anything so unreasonable in the amount of the verdict as to suggest that such extraneous considerations influenced the act of the jury.
Finally, we are to consider the propriety of the refusal of the Court below to grant a new trial for insufficient evidence. This is the first time such a motion has properly come before the General Term for its decision. By our rules, as they now stand and have existed since the organization of this Court in 1863, such a motion “is addressed to the discretion of the trial justice and is not appealable” to the General Term. But the Supreme Court, in the case of Metropolitan R. Co. vs. Moore, 121 U. S., 558, has recently decided that this view of the law was erroneous; and we have, therefore, been obliged to examine the entire record with a view to a decision on this motion. We labor of course under the disadvantage, which did not embarrass the justice below, that we have no other means of deter *244 mining the relative intelligence of the opposing witnesses; of ascertaining whether they are old or young, white or black, gentle or simple, or of judging of their manner upon the witness stand as indicating bias or prevarication, or entire candor, beyond what is to be gathered from their testimony reported in the record. But after making all proper allowance for this drawback, and giving that due weight to the ruling of the justice who saw and heard the witnesses, which all the authorities declare must be allowed to it, we see nothing in the testimony, considered as a whole, that should induce us to say there was error on his part, on refusing to disturb the verdict of the jury upon this ground.

The rulings below are, therefore, affirmed.