Burket, J.
Section 5088, Revised Statutes, provides that: “When the allegations of a pleading are so indefinite and uncertain that the precise nature of the charge or defense is not apparent, the court may require the pleading to be made definite and certain by amendment.”
This means that the court shall in a proper case require the pleading, to be made definite and certain. It is not a mere matter of discretion. It is a substantial right to a party to have the pleading against him so definite and certain as to enable him to know what he has to meet, and to prepare his evidence accordingly.
*333 The charge of negligence against the company that it “negligently and carelessly approached and crossed said highway with said locomotive and train of cars at a high, immoderate and dangerous rate of speed,” and “negligently and carelessly operated and handled its said locomotive and train of cars,” gave no definite or certain notice to the company as to what acts of commission or omission claimed to be negligent would be attempted to be proved or relied upon at the trial, and therefore the petition should have been required to be made definite and certain by stating the acts of commission and omission claimed to have caused the injury, so as to advise the company as to the facts claimed to have been negligently done or omitted, and to enable it to meet the same. Upon the trial the evidence should be confined to the acts .of negligence so specifically and definitely averred in the petition. This is in accordance with the rule of pleading laid down in Davis v. Guarnieri, 45 Ohio St., 470. It was there held that the fact claimed to have caused the injury being averred, it was sufficient to state that it was negligently done. But to say that the company “negligently and carelessly operated and handled its said locomotive and train of cars,” avers no fact as causing the injury, and does not aver that any fact causing the injury was carelessly done or omitted. It is a general averment at large of negligence, and the court erred in overruling the motion to make definite and certain.
The court also erred in refusing to strike out the words, “at a high, immoderate and dangerous rate of speed.”
As the general assembly has the power to reasonably regulate the speed of trains, not only in cities, but also in the country, and has failed to exercise that *334 power, as to speed in the country, such failure is an implied warrant to railroad companies to run their trains in the open country at such rate of speed as those in charge of the same may deem safe to the transportation of passengers and property, such safety however being the paramount consideration.
As there are road crossings in the country every few miles, it is inconsistent with proper speed of transportation, that trains should slack up for such crossings. Safety is secured to persons at such crossings by the observance of the statutory signals, and such signals being given, the train is not limited as to speed.
It has sometimes been held, and correctly, that a high rate of speed when taken in connection with other facts and the surrounding circumstances, may become an element or factor in constituting negligence; but when such is the case, the facts constituting such surrounding circumstances should be pleaded, so that the court can judge from the pleadings whether the high rate of speed is a proper factor in constituting negligence, because a high rate of speed alone cannot constitute negligence as a matter of law. Elliott on Railroads, in section 1160, skys: “In the absence of any statute or ordinance upon the subject, no rate of speed is negligence per se.” The same doctrine is laid down in section 1873 of Commentaries on the Law of Negligence by Thompson.
The petition shows no fact making this crossing dangerous, or other than the usual country road crossing, and no fact or circumstance, which, when combined with a high rate of speed, would constitute negligence. The court should therefore have stricken out those words as to speed. The case of Railroad Co. v. Lawrence, 13 Ohio St., 66, is instructive as to the question of speed of trains. The injury in the case of *335 Schweinfurth v. Railway Company, 60 Ohio St., 215, occurred at a street crossing in a city where there was an ordinance regulating the rate of speed, and it was there held that under the circumstances of that case, a high rate of speed, contrary to the provisions of the ordinance, might constitute an element in determining the question of negligence; hut at road crossings in the country, where there is no law regulating the rate of speed, the rule does not prevail.
At the close of the evidence and before argument, the court upon request of counsel for plaintiff below, gave to the jury the following charge:
“The jury are instructed that the defendant railroad company had, at the time of the collision complained of, the same right to use that portion of the public highway over which its track passed at the point of collision that the public had. Its rights and those of the plaintiff were mutual, and reciprocal, and the railroad company and the plaintiff were bound to have due regard each for the safety of the other.” This charge was too strongly in her favor. While in law she had the same right to use the crossing that the railroad, company had, the different modes of such use constitute a difference in right. As she could stop with her team within a few feet, and the train could not stop short of many rods, it follows of necessity that when both were approaching the crossing at the same time, the train had the right of way, and it was her duty to stop and let the train pass before attempting to cross. Commentaries on Law of Negligence by Thompson, Section 1611. Continental Improvement Company v. Stead, 95 U. S., 161, 163. Such would be the conduct of all men of ordinary care under such circumstances. To rush ahead and at *336 tempt to pass knowing the train to be close at hand, is not the conduct of ordinary prudent persons, but is gross negligence. To drive upon a crossing without first looking for passing trains is also negligence. The looking should usually be just before going upon the crossing, or so near thereto as to enable the person to get across in safety at the speed he is going before a train within the range of his view of the track, going at the usual speed of fast trains, would reach the crossing. There should be such looking before going upon the track, even though there was a looking farther away when no train was seen approaching. A train at the usual speed will go quite a distance, while a team on a walk or trot will go a much shorter distance. The care to be taken in such cases should correspond with the danger.
The court in the special charges given at the request of plaintiff’s counsel, in speaking of the duty of those in charge of the train to use care in discovering the plaintiff as she approached the crossing and using means to prevent injury to her, includes all the trainmen without explaining the duties of any of them, but puts upon all the duty of caring for her so as to prevent injury. Three of the trainmen were in the caboose away from the engine, and without means of immediate communication with the engineer, and yet they are included in the instruction as to trainmen, when they could do nothing to prevent the accident. The engineer also is a trainman, and the charge imposes upon him along with the other trainmen the duty of seeing her danger and being careful to shield her as she approached and drove upon the crossing.
It is the duty of an engineer on a train to keep a lookout on the track ahead of him, and he is not expected to see anything on the sides of the right of way *337 farther than his eye may take in objects within the range of vision while looking ahead along the track. Elliott on Railroads, sections 1159 and 1205. Commentaries on the Law of Negligence by Thompson, section 1592, et seq. In Railroad Company v. Elliott, 4 Ohio St., 474, 476, this court held that “The paramount duty of a conductor of a train is to watch over the safety of the persons and property in his charge.” The same is true of an engineer. His paramount and first duty is to watch over and guard the safety of the persons and property in his charge, and that is most effectually done by keeping a strict lookout ahead along the track, so as to see any obstruction at the earliest moment, and thus be prepared to avert danger to his train. So important is this duty of the engineer to keep a lookout ahead of his train, that in some of the states it is required and regulated by statute. His duty being to look ahead, it cannot be his duty to look at the same time to the sides. If, however, while so looking ahead his eye takes in a person approaching the track at a crossing or elsewhere, he is then bound to use ordinary care to prevent injury, his first care however being for the safety of his passengers and property on board for transportation. He may presume that such person will keep away from the track until the train passes, but when it becomes evident that the person cannot or will not keep away from the track, then he must do all he reasonably can to prevent injury.
Upon the trial of this case it was urged by counsel for plaintiff, that she was discovered by the trainmen in the act of going upon the crossing in time for the engineer to have so slowed down his train after such discovery as to have prevented the injury. The rail *338 road company claimed that she was not seen by the engineer until the collision occurred, and that it did not become evident to the brakeman and fireman on the left hand side of the engine, that she was about to drive upon the crossing, until the very moment of the collision, and that it was then too late to notify the engineer." It was with reference to these different claims that the special charges were given.
It has often been held by courts that when a person suddenly finds himself in a position of imminent peril or danger he cannot be held to a strict account as to the course of conduct to be by him pursued to avoid injury. Railroad Company v. Mowery, 36 Ohio St., 418; Elliott on Railroads, section 1173; Railroad Co. v. Snyder, 55 Ohio St., 342.
While engineers of locomotives ate expected from their training, experience, and the nature of their duties, to be equal to almost any emergency in the management of their trains, yet itmustberemembered in their favor that they have mind and nerves the same as other peoplé, and that when they are suddenly and unexpectedly confronted with imminent peril or danger to themselves or to the persons and property in their charge, by obstructions on the track or about to go thereon, they cannot be held to a strict course of conduct to prevent injury to persons or property not connected with the train, so that the action taken is in good faith, and at the time believed to be the best. When a person or animal is seen approaching the track, and it becomes evident that he or it will not stop but attempt to cross, it is sometimes safer to slow down or stop the train, and sometimes safer to increase the speed and get the train across first. The course to be pursued must be instantly determined by°the engineer at the peril of himself and *339 the persons and property in his charge, and the course selected by him and carried out in good faith in the face of such peril, and in view of the surrounding circumstances, cannot constitute negligence on his part, even though others might be able to suggest and point out afterwards, that a different course would have been less liable to result in injury. As to the persons and property in his charge, the* engineer must use the greatest care, but as to persons and property not connected with the train, he must use only ordinary care. He must therefore be allowed to determine for himself in good faith upon the spur of the moment and in view of the peril before him, the course to be pursued for the safety of the persons and property in his charge, without being called to a very strict account by those to whom he owes only ordinary care.
What was said by this court in Express Co. v. Smith, 33 Ohio St., 511, at page 519, is applicable to such cases: “There is an em post facto wisdom, which, after everything has been done, without success, can suggest that something else should have been attempted, but this is a sagacity much more astute than ordinary human foresight, and can hardly furnish a fair rule by which to determine the propriety of what has been done in good faith, and with judgment exercised under the best light afforded.”
At the request of the plaintiff below, the court also charged the jury in different forms before argument, to the effect that the jury must determine from the evidence under the instruction of the court, whether plaintiff in approaching the crossing used such care as persons of ordinary care and prudence would use under like or similar circumstances. Sometimes the word “evidence” was left out. These charges were all defective *340 at least in this :the question was put as to approaching the crossing, instead of going onto the crossing. She may have been ever so careful in the approach, and yet extremely negligent in driving upon the crossing in the face of a rapidly approaching train. If she was negligent in going upon the crossing in front of a rapidly approaching train, thinking that she could cross in safety, and the engineer after seeing her was negligent in not slowing down or stopping his train, thinking that she would get across in safety, the proximate cause of the injury was the miscalculation and negligence of both, and there could be no recovery, unless the engineer after he saw her and realized her danger, had time to so slow down or stop as to prevent the injury. Or if the fireman and brakeman riding on the left side of the engine saw her, and saw and realized her danger in time to notify the engineer in time to enable him to so slow down or stop the train as to have prevented the injury, and failed to so notify the engineer, such failure would be such negligence as would sustain a recovery; but if, after it became evident to them that she was about to drive upon the crossing, there was not time to notify the engineer, and then time for him to so slow down or stop the train as to prevent the injury, there could be no recovery.
When the fireman and brakeman saw her driving toward the crossing, they had a right to rely that she would use due care and not go upon the crossing, and it was only when it became evident that she was going upon the crossing that the duty devolved upon them to notify the engineer, and if there was then time to save her, she should have been saved; but if it was then too late to save her, the injury was, as to the railroad company, an inevitable accident, and for *341 such there can be no recovery. If on her part it was a race to beat the train over the crossing, the injury was her own fault and there could be no recovery. It is urged that there was a deep ditch on one side of the road and a fence on the other, and that she could not turn her team around. But no effort is shown to turn the team, and besides it is always safer to run into a fence or even a deep ditch than onto a railroad crossing in front of a fast train.
There were no facts or surroundings plead or proven, which, when taken in connection with a high rate of speed, would make such speed an element or factor in negligence, and therefore what was said as to such high rate of speed in the charge was error.
Whatever the engineer and those on the engine with him, would see while in the proper discharge of their duties, they are chargeable with having seen, but they are not required to neglect their duties on the train to look outside of the right of way for approaching persons or animals, not within the range of vision while looking ahead along the track.
After argument the court charged the jury as follows :
“The defendant had the right to run the train at the time and place of this collision at any speed consistent with the safety which was necessary in the conduct of its business in the usual and ordinary manner, taking into consideration, however, all the circumstances surrounding that crossing, affecting the traveling public and having a due regard for the safety of the public using the crossing.”
From what has already been said as to the speed of trains, it will readily be seen that the latter part of this charge, all after the word “manner,” is erroneous.
*342 The court also charged the jury that if trees, shrubbery or weeds presented an obstruction to view, it required care and caution on part of plaintiff and defendant according to their respective rights as explained by the court. The inclusion of the defendant in this charge was error. The trees, shrubbery and weeds outside of the right of way, imposed no care or caution upon the company in running its train.
The court also charged the jury as follows:
“While it is true that the railroad company is not responsible for weeds or bushes growing outside of its right of way, even though they obstruct a view by travelers upon the highway, yet, if you find from the evidence such weeds or bushes to have existed in such manner in this case, it is a circumstance which the jury should consider in determining whether or not the railway company was guilty of negligence in approaching this crossing of the county line at the rate of speed at which it approached the same with its train upon this occasion.”
This charge was clearly error, because the weeds and brush in question were not a circumstance to be considered by the jury in determining the question of negligence.
The court also in charging as to the duty of the company and its servants after seeing her danger, included the trainmen. This was too broad, as it included those in the caboose who could do nothing to avert the injury.
The court also charged the jury that the question of negligence was wholly for the jury to determine from the evidence. He should have added “under the instructions of the court.”
The court also charged the jury that the negligence, *343 if any, of the father was not imputable to the daughter. While it is true that the doctrine of imputed negligence does not prevail in this state, that doctrine was not applicable to the facts as claimed to be by the defendant in this case, and as the evidence tended to prove. The father being nearly deaf, took the daughter along to hear for him, and as they came to the west side of the piece of woods, he told her to look and listen for trains, and she did so by raising the rear curtain and looking in the direction of the railroad.
If it be true that she was to do the listening, and also to assist in the looking while he was doing the driving, they were engaged in a joint enterprise, and each would in such case be chargeable with the negligence of the other.
It has often been held that the negligence of a servant is imputable to the master, because he is the superior. Street Ry. Co. v. Wright, 54 Ohio St., 181. On principal and sound reason the rule should be applied to those who take an active part in a joint enterprise.
As to the wild cherry tree standing in the south line of the railroad right of way east of the ridge road, it is difficult to see how it could be an obstruction to her view of the train at the time of going upon the track, because the train was then far west of the cherry tree, and the tree was behind the train. The time to look and listen for the last time is shortly before going upon the track as before explained, and as the train was near enough to catch her before getting over the crossing at a fast trot or gallop,' the train must have been far past the cherry tree when she should have looked the last time. If she saw the *344 cherry tree as she drove by it, or knew of its being there, it only imposed upon her greater care and caution if she regarded it as an obstruction to her view. Penn. Co. v. Morel, 40 Ohio St., 338.

Judgment reversed.

Spear, Davis, Shauck and Price, JJ., concur.