Charles FRIEDMAN and Helen Friedman, Husband and Wife, Appellants,

v.

GENERAL MOTORS CORPORATION.

No. 17360.

United States Court of Appeals Third Circuit.

Argued Jan. 6, 1969.

Decided June 9, 1969.

David Kanner, Kanner, Stein, Feinberg & Barol, Philadelphia, Pa., for appellants.

Perry S. Bechtle, Esquire, Liebert, Harvey, Bechtle, Herting & Short, Philadelphia, Pa., for appellee.

Before BIGGS, FOREMAN and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The plaintiffs-appellants, Charles and Helen Friedman, husband and wife, sued the defendant-appellee, General Motors, the manufacturer of their washing machine, alleging that Mrs. Friedman's thumb was injured and had to be amputated because of defects in the design and construction of the machine. At pretrial the plaintiffs alleged breach by the defendant of express and implied warranties of merchantability and fitness in that the washing machine "did spin with the top open when it should not have spun with the top open", and also amended their pretrial statement adding "Section 402A of Restatement of Torts as a basis for liability". During the trial plaintiffs' counsel announced that they would proceed on the theory of breach of warranty and under the strict liability provisions of Section 402A of the Restatement. At the conclusion of all the evidence and just before the case was submitted to the jury plaintiffs' counsel withdrew the breach of warranty claims and requested the court to submit the case to the jury solely on the basis of the principles set out in Section 402A.[1] The only issue presented to the jury was based on that section of the Restatement. The jury rendered a verdict in favor of the defendant and this appeal followed.

On the edge of the rim of the washing machine, adjacent to its opening, there is a small button, called a "Safety Switch", positioned in such a way that when the lid of the machine is lifted the safety switch comes into an "up" position, breaking an electric current, thereby interrupting the spinning cycle of the tub which immediately ceases. But when

---

1. The plaintiffs' frequent changes of direction created a confused record rendering the trial processes unnecessarily difficult.

the lid of the machine is put down, the safety switch by reason of the pressure of the lid is put into a "down" position which completes the electric circuit causing the tub to spin.

The evidence shows that Mrs. Friedman opened the lid of the washing machine to take out her washing. This fact we believe to be uncontroverted. But thereafter the positions of the parties sharply diverge. The plaintiffs' position is stated, we conclude, by their counsel in his summation to the jury and is as follows: "This washing machine has a feature built into it, that the manufacturer brags about and rightly so, and that is this safety device that says when the top is open—it says it in the book, it says it right on the lid [of the machine] to make sure you know about it—when the top is open, it can't spin, and the fact is that in this case with the top open, it did spin, and nobody questions that.

\*　　\*　　\*　　\*　　\*　　\*

"[I]f everything is working right it [the washer] can't spin with the lid open, and in order for it to spin with the lid open, something has to be wrong.

\*　　\*　　\*　　\*　　\*　　\*

"There has to be a defect, and this defect makes this machine unreasonably dangerous because you can get your hand or thumb caught in it and get it torn off. \* \* \*"

The Friedmans point out that there was evidence that the safety switch connection was "gummed up" with residue of soap, "slime" or "sludge", and when the safety switch was pressed into its down position, this gum-like substance and, perhaps, its accompanying moisture, caused the inner mechanism [microswitch] to stick and may have aided in closing the circuit.[2]

It will be observed that the plaintiffs did not assert that the position of the safety switch was unreasonably dangerous because it could be touched by someone putting clothes into or taking clothes out of the washing machine.

It is the theory of General Motors that reaching inside the machine to withdraw her washing, Mrs. Friedman touched the "Safety Switch" in such a way that the tub was actuated into its spinning cycle. Dr. Fegley, the defendant's expert, gave opinion evidence as to how Mrs. Friedman could have been injured, stating: "[I]f Mrs. Friedman had opened the lid to the washing machine during the middle of the spin cycle and then reached in and put her hand on the lid safety switch, this would have started to spin again." Dr. Fegley's statement is not entirely clear but we take it to mean that in his opinion if Mrs. Friedman had put her hand on the lid safety switch, the spin cycle would have started again. This reply was given in answer to a question as to what was the opinion of Dr. Fegley as to the cause of the accident.[3]

2. The court charged in respect to this issue, *viz.*, the accumulation of slime and sludge: "[I]f you accept this as correct, namely, that the design of the washer was improper in that it was designed in such a way as to permit the accumulation of slime and sludge in such a way as to render this safety switch likely to become unsafe, if that is your conclusion, you would have the right to conclude that this condition, this design condition, certainly existed when the washer was sold, and the mere fact that the accident didn't happen until some time thereafter would not prevent you from concluding that the accident was due to a defective condition which was existing in the washer at the time it was sold." The jury obviously

concluded that there was no defect in the design of the washing machine in this respect.

3. The plaintiffs assert that the court below committed prejudicial error in not striking from the record the testimony of defendant's expert, Dr. Fegley, who gave opinion evidence as to how Mrs. Friedman could have been injured. The plaintiffs contend that this statement is mere "conjecture" and is not based on any evidence. But Dr. Fegley had testified at some length respecting the construction and operation of the machine and had tested it, albeit two and a half years after the accident. While there was no direct evidence that Mrs. Friedman had put her

Since the plaintiffs pitched their case upon the provisions of Section 402A [4] Judge Fullam repeatedly charged the principles enunciated in that section, sometimes employing its exact language and sometimes charging its substance. For example, he stated: "[A]s to the legal principles which are more directly relevant to the present case, I would point out that under our law one who sells any product in a defective condition unreasonably dangerous to the user or consumer is liable for physical harm caused thereby to the ultimate user or consumer, if the seller is engaged in the business of selling such a product and if the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. Now, these principles apply irrespective of whether the seller or manufacturer has exercised all possible care in manufacture. * * * " [5]

The court further charged: "In short, a manufacturer of an article is not an absolute guarantor that nobody will ever get hurt in using that article. All that the manufacturer is required to do is to make an article which is reasonably safe and to the extent that the article cannot be made reasonably safe but nevertheless because of its utility it is desirable that it be made, in that situation it is the obligation of the manufacturer to give appropriate warnings of any dangerous condition which is likely to be encountered."

Following the charge, counsel for the appellants stated: "If Your Honor please, I except to that portion of your charge which says that the defendant is a guarantor but may only make the product reasonably safe, because 402A [Restatement, Torts 2d] says they [sic] are liable if they [sic] exercised all possible care. I don't think the guarantor principle is applicable and I don't think the aspect of your charge on making it reasonably safe is applicable because it

---

hand on the lid safety switch, the evidence shows that she could have done so however inadvertently. We cannot say that Dr. Fegley's statement was mere conjecture. It was opinion evidence based on the nature of the machine and its operation. His testimony meets the test laid down by us in Arnold v. Loose, 352 F.2d 959, 963, (3 Cir. 1965) for it is the opinion of an expert based on material facts which are part of the record.

4. "Topic 5. Strict Liability. § 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.
   "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and
   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
   "(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product. * * * "

5. The Friedmans submitted numerous requests for charge. Only two of these, Nos. 13 and 14, seem germane on this appeal.

They are as follows: "13. The Court is instructed that the above rule [of law, set out in Section 402A] is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product: Comment A, Restatement of Torts 2d, Section 402A."

"14. The jury is instructed that the justification for this strict liability is that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods: Comment C, Restatement of Torts 2d Section 402A."
The court charged 13 but refused to charge 14. We can perceive no substantial error in the refusal to charge 14. It is, of course, Comment C, of the Restatement, but the trial court is nonetheless free to use its own phraseology in preparing the charge. Southern Pacific Co. v. Guthrie, 180 F.2d 295, 301 (9 Cir. 1949), quoting from Continental Improvement Co. v. Stead, 95 U.S. 161, 165–166, 24 L.Ed. 403 (1877).

is not within the strict liability concept." [6] It will be observed that counsel's statement is somewhat garbled, but he seems to object to the statement of the court that the manufacturer may make his product only "reasonably safe". The Restatement, of course, uses the converse phrase, "unreasonably dangerous". But the court had also charged: "Now, as to the legal principles which are more directly relevant to the present case, I would point out that under our law one who sells any product in a defective condition unreasonably dangerous to the user or consumer is liable for physical harm caused thereby to the ultimate user or consumer, if the seller is engaged in the business of selling such a product and if the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." It should also be pointed out that the trial Judge charged repeatedly in respect to the applicability of the "strict liability" provisions of Section 402A that "these principles apply irrespective of whether the seller or manufacturer has exercised all possible care in manufacture. * * *" [7]

After the exception taken by appellants' counsel as quoted above, the court did not change its charge to meet the appellants' counsel's exception, but simply stated, "[A]nything else?" Counsel thereupon proceeded to another point in the charge with which we are not now concerned.

 Should the judgment be reversed because the court below referred once in its charge to making the machine "reasonably safe" instead of following the precise language of Section 402A and stating that the obligation was upon General Motors not to make the machine "unreasonably dangerous"? We have not been shown in what respect this charge

fails to comport with the strict liability concept as interpreted by the courts. Bartkewich v. Billinger, 432 Pa. 351, 247 A.2d 603 (1968); Greco v. Bucciconi Engineering Co., Inc., 407 F.2d 87 (3 Cir. 1969). And while the number of times a phrase is used does not supply a guage as to its influence upon a jury, we note nonetheless that on four separate occasions after the "reasonably safe" phrase had been used, the court below again used the exact language of Section 402A, *viz.*, "unreasonably dangerous" to the consumer. We note further in this connection that the Friedmans' counsel did not produce any expert witness to testify that the safety switch was in a dangerous or unsafe position or even was in a position that was not reasonably safe. In view of this lack of evidence counsel's exception to the charge is without merit.

The judgment will be affirmed.

6. Tr. p. 309.

7. The trial court also ·charged as follows: "So I take it the key question which you would have to resolve in this case is, was the product in a defective condition unreasonably dangerous to user or consumer

at the time it was sold by General Motors? * * * Now, the key issue here is what was the condition of the article when the plaintiff got it, when it was delivered, sold by General Motors. Was it then in a defective condition unreasonably dangerous to the consumer?"