## TEXAS AND PACIFIC RAILWAY COMPANY *v.* GENTRY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 258. Argued April 29, 1896. — Decided May 18, 1896.

In this case, while there was in form a separate judgment, in favor of each of the persons for whose benefit the action was brought, the statute of Texas creates a single liability on the part of the defendant, and contemplates but one action for the sole and exclusive benefit of the surviving husband, wife, children and parents of the persons whose death was caused in any of the specified modes.

A decree or judgment by the Circuit Court of Appeals, affirming a decree or judgment of a Circuit Court, without specifying the sum for which it is rendered, is a final decree or judgment, from which an appeal or writ of error will lie to this court.

This case was one peculiarly for the jury, under appropriate instructions from the court as to the principles of law by which they were to be guided in reaching a conclusion as to the liability of the railroad company for the death of its employé; and the positions taken to the contrary have no merit.

The law presumes in the entire absence of evidence, that a railroad employé, in crossing the track of the railroad on foot at night to go to his duty, looks and listens for coming trains before crossing.

It is only when facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court.

THE case is stated in the opinion.

*Mr. John F. Dillon,* (with whom were *Mr. Winslow F. Pierce* and *Mr. David D. Duncan,* on the brief,) for plaintiff in error.

*Mr. R. C. Garland* for defendant in error. *Mr. A. H. Garland* and *Mr. Charles I. Evans* were on the brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an action to recover damages alleged to have been sustained by reason of the negligence of the defendant railway company, the present plaintiff in error, resulting in the death of Louis D. Gentry. It was brought in the Circuit Court of Dallas County, Texas, and was removed into the Circuit Court of the United States for the Northern District of Texas on the petition of the defendant, a corporation created under acts of Congress.

The deceased left surviving him his mother, the plaintiff Mary A. Gentry, seventy-five years old, and dependent upon him for support; his wife, the plaintiff May Gentry, twenty-six years of age; and two children, the plaintiffs Olive Lee Gentry and Thomas M. Gentry, six and two years of age, respectively.

By the statutes of Texas, in force when the alleged injuries were received, it was provided:

"ART. 2899. An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: 1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer or hirer of any railroad, steamboat, stage coach or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence or carelessness of their servants or agents. 2. When the death of any person is caused by the wrongful act, negligence, unskilfulness or default of another.

"ART. 2900. The wrongful act, negligence, carelessness, unskilfulness or default mentioned in the preceding article must be of such a character as would, if death had not ensued,

have entitled the party injured to maintain an action for such injury.

"ART. 2901. When the death is caused by the wilful act or omission or gross negligence of the defendant, exemplary as well as actual damages may be recovered.

"ART. 2902. The action may be commenced and prosecuted, although the death shall have been caused under such circumstances as amounts in law to a felony, and without regard to any criminal proceeding that may or may not be had in relation to the homicide.

"ART. 2903. The action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been so caused, and the amount recovered therein shall not be liable for the debts of the deceased.

"ART. 2904. The action may be brought by all of the parties entitled thereto, or by any one or more of them for the benefit of all.

"ART. 2905. If the parties entitled to the benefit of the action shall fail to commence the same within three calendar months after the death of the deceased, it shall be the duty of the executor or administrator of the deceased to commence and prosecute the action, unless requested by all of the parties entitled thereto not to prosecute the same.

"ART. 2906. The action shall not abate by the death of either party to the record if any person entitled to the benefit of the action survives. If the plaintiff die pending the suit, when there is only one plaintiff, some one or more of the parties entitled to the money recovered may, by order of the court, be made plaintiff and the suit be prosecuted to judgment in the name of such plaintiff for the benefit of the persons entitled.

"ART. 2907. If the sole plaintiff die pending the suit, and he is the only party entitled to the money recovered, the suit shall abate.

"ART. 2908. If the defendant die pending the suit, his executor or administrator may be made a party, and the suit be prosecuted to judgment as though such defendant had con-

tinued alive. The judgment in this case, if rendered in favor of the plaintiff, shall be paid in due course of administration.

"ART. 2909. The jury may give such damages as they may think proportioned to the injury resulting from such death; and the amount so recovered shall be divided among the persons entitled to the benefit of the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict." Sayles' Tex. Civ. Stat.

There was a verdict in favor of the plaintiffs as follows:

"We, the jury, find for the plaintiffs ($10,166.66) ten thousand one hundred and sixty-six dollars and sixty-six cents, apportioned among plaintiffs as follows:

"May Gentry, four thousand one hundred and sixty-six dollars and sixty-six cents;

"Olive Lee Gentry, two thousand five hundred dollars;

"Thos. M. Gentry, two thousand five hundred dollars;

"Mary A. Gentry, one thousand dollars."

Separate judgments were rendered in favor of each plaintiff for the respective sums awarded by the verdict and for costs, for which execution was directed to issue.

A motion for a new trial having been made and overruled, the case was taken to the Circuit Court of Appeals, and by that court the judgment of the Circuit Court was affirmed with costs to the plaintiffs.

It was alleged in the complaint and there was evidence tending to show (although this evidence was weakened by that introduced on behalf of the railroad company) —

That the deceased was an engineer on the regular passenger train of the defendant running between Big Springs, in Howard County, Texas, and Toyah, in Reeves County, Texas, and was paid for the number of miles actually run by him as such engineer;

That he had brought his train into Big Springs from Toyah about six o'clock on the morning of March 13, 1890, and was off duty that day, the schedule time for his going on duty again being twenty-five minutes past nine o'clock in the evening of the day when his train would leave Big Springs for Toyah;

That at fifteen minutes after eight o'clock on that evening the deceased left his residence for the purpose of going to and taking charge of his engine;

That his train was standing at its usual and customary place on a switch on the north side of the defendant's yards at Big Springs, and in order to reach his engine he was compelled to pass over and across several switches and the main track;

That while so passing across and over the defendant's yards, as he and other employés had been in the habit of doing for the previous nine or ten years, along the usual and customary path, and between the hours of twenty minutes after eight o'clock and nine o'clock, he was run down and killed by a flat car coupled in front of a locomotive used by the defendant for switching purposes, and while moving westward on the main track of defendant's road in said yards;

That the defendant failed to place any headlight, lantern or lights of any kind, or any other signal of danger, or any person to watch for employés on said flat car, to give warning of its character or to sound a whistle or to ring the bell of the locomotive as it approached the crossing where the deceased was struck down;

That the headlight on the locomotive was so arranged that the rays of light from it passed entirely over and beyond the flat car in front of such locomotive;

That the defendant failed to have any lanterns or lights of any kind in or about its yards or along that crossing;

That the engine used by the company for switching purposes on the occasion referred to was an ordinary heavy road engine with a pilot on in front, and was wholly unsuitable and unfit for such purposes, and that in order to make it useful the defendant coupled an ordinary flat car in front of the engine; and —

That the deceased, not knowing of such use of an ordinary road engine, with a flat car coupled in front of it, for switch-ing purposes, and while passing along said usual and customary crossing through the defendant's yards, unable to see the flat car on account of the darkness of the night, and being blinded

by the headlight on the engine, and not hearing the whistle or bell of the locomotive, and not knowing anything of the : use and danger of the locomotive and flat car as an appliance for switching purposes, was run over by the flat car and immediately killed.

The action proceeded on the general ground that the railway company failed in its duty to supply and furnish proper and suitable machinery for switching purposes, so guarded by lights and otherwise as to give warning to its employés who, in the discharge of their duties, were compelled to cross the tracks of the defendant's yards.

At the close of the evidence the company made six requests for instructions, one of which was that, as the plaintiffs had failed to prove their case, and had shown no right to recover, the jury should find for the defendant. These requests were all denied, and the defendant excepted to the action of the court in respect of each request.

The court then charged the jury as follows:

"In this case there is no dispute about the following facts: Louis D. Gentry, on the night of the 13th of March, 1890, was run over and killed by a flat car of the defendant, propelled by a switch engine in its yards at Big Springs, Texas; at the time of his death he was an engineer of defendant, 35 years old, and earning from $150 to $160 per month; that he left surviving him his wife, May Gentry, 26 years old, and two children, Thomas Gentry, now three years old, and Olive Lee, now seven years old, and his mother, Mary A. Gentry, who is a widow and to whose support he contributed $15 to $25 per month; that his mother was about 75 years old at the time of Louis D. Gentry's death.

"Louis D. Gentry, deceased, assumed the risk naturally incident to crossing the railroad track of defendant at Big Springs to reach his car or in crossing said track for any other purpose. You are further instructed that defendant in switching the cars where said Gentry was killed was not required to furnish absolutely safe machinery to do switching at that place, but only to use reasonably safe machinery to do said switching, and if you find from the evidence that

the road engine and flat car used on the occasion when said Gentry was killed were reasonably safe and were fairly adapted for switching purposes at Big Springs, then you will find for defendant.

"If, however, you find from the evidence that said road engine and flat car used by the defendant in switching when said Gentry was killed were not adapted to switching purposes, and that as appliances for that purpose they were unsafe by reason of the way the light from the headlight struck the flat car and track of the road or from other defects disclosed by the evidence, and that said Gentry's death was directly occasioned by said defects, without any fault or negligence on his part, then you will find for plaintiffs.

"In considering whether the road engine and flat car used on defendant's road at the time said Gentry was killed were safe or unsafe appliances to be used in switching, your attention is asked to all the evidence *pro* and *con* on that subject, such as the opinion of the witnesses, the custom of this particular railroad, the effect of attaching flat cars, the effect of the engine light in lighting up the flat car and track, the effect of the pilot.

"A corporation is liable in damages to its employé who is injured by the use of defective machinery or machinery not adapted to the purposes for which it is used. The master, however, is not responsible if the employé had full knowledge of such defect or want of adaptability of the machinery used to the purpose for which it was used, nor is he liable if deceased contributed by his own neglect to his death.

"Louis D. Gentry was a fellow-servant of the employés of defendant operating the switching train that killed him. The defendant is, therefore, not responsible for any negligence that caused his death, but if responsible at all, it must be under the 3d and 5th charges above."

At the request of the plaintiffs the court gave this special instruction: "The law does not exact of an employé the use of diligence in ascertaining defects in the appliances or instruments furnished by a railroad company, but charges him with knowledge of such only as are open to his observation. Be-

yond that he has a right to presume without inquiry or investigation that his employer has discharged its duty of furnishing safe and proper instruments and appliances."

The court then instructed the jury, at the request of the defendant, as follows: "You are further instructed that railway companies are not required to furnish the best and latest appliances, but the appliances and machinery used by them in the carrying out of their business must be reasonably safe, and they are only required to exercise ordinary care to select and keep their appliances and machinery in safe condition. By 'ordinary care' is meant such care as a person of ordinary prudence would exercise under like circumstances. You are therefore instructed that if you find and believe from the evidence that the engine and flat car used for switching purposes were reasonably safe, and that the Texas and Pacific Railway Company exercised ordinary care in the selection of the same, and the injury complained of was not the result of a failure on the part of the Texas and Pacific Railway Company to exercise such ordinary care, then you will find for the defendant."

1. The plaintiff Mary A. Gentry, the mother of the deceased, has moved to dismiss the writ of error as to her upon the ground that, her cause of action being separate and distinct from that of her co-plaintiffs, and a separate judgment in her favor for only $1000 having been entered in the Circuit Court, this court is without jurisdiction under the sixth section of the act of March 3, 1891, c. 517, which declares that in all cases not by that section made final "there shall be of right an appeal or writ of error or review of the case by the Supreme Court of the United States where the matter in controversy shall exceed one thousand dollars besides costs." 26 Stat. 826.

This motion is overruled. While there was in form a separate judgment in favor of each of the persons for whose benefit the action was brought, the statute of Texas creates a single liability on the part of the defendant, and contemplates but one action for the sole and exclusive benefit of the surviving husband, wife, children and parents of the persons

whose death was caused in any of the specified modes. The final order in the Circuit Court was, in legal effect, a judgment for the whole amount of the damages found by the jury. Such an action as this can be brought by all the parties interested, or by any one of them for the benefit of all. If the parties entitled to bring suit fail to do so within the time prescribed, it becomes the duty of the personal representative of the deceased to commence and prosecute it. By whomsoever brought the jury may give such damages as they think proportioned to "the injury" resulting from the death. It is one injury for which damages may be recovered, and "the amount" so recovered is to be "divided" among the persons entitled to the benefit of the action, or such of them as shall then be alive, "in such shares" as the jury shall find by their verdict. The jury found that the damages sustained by the deceased were $10,166.66. That was the amount in dispute. The "matter in controversy" was the liability of the defendant company in that amount by reason of the single injury complained of. If the defendant was liable in that sum — and such liability was fixed upon it by the verdict and final judgment thereon — it was of no concern to it how that amount was divided among the parties entitled to sue on account of the single injury alleged to have been committed.

The case is determined by *Shields* v. *Thomas,* 17 How. 3, 4, 5. In a proceeding in one of the courts of Kentucky a decree was rendered against the defendant for a large sum of money, "the shares of the respective complainants being apportioned to them in the decree," and the defendant being directed "to pay to each the specific sum to which he was entitled, as his proportion of the property misappropriated." A suit was brought in Iowa to enforce the decree of the Kentucky court, and the relief asked was a decree that Shields might be compelled to pay to the plaintiffs, respectively, "the several sums decreed in their favor." A decree of that kind was rendered. This court, speaking by Chief Justice Taney, said: "The whole amount recovered against Shields, in the proceedings in Iowa, exceeds two thousand dollars. But the sum allotted to each representative who joined in the bill was less. And

the motion is made to dismiss, upon the ground that the sum due to each complainant is severally and specifically decreed to him ; and that the amount thus decreed is the sum in controversy between each representative and the appellant, and not the whole amount for which he has been held liable. And if this view of the matter in controversy be correct, the sum is undoubtedly below the jurisdiction of the court, and the appeal must be dismissed. But the court think the matter in controversy in the Kentucky court was the sum due to the representatives of the deceased collectively; and not the particular sum to which each was entitled, when the amount due was distributed among them, according to the laws of the State. They all claimed under one and the same title. They had a common and undivided interest in the claim, and it was perfectly immaterial to the appellant how it was to be shared among them. He had no controversy with either of them on that point; and if there was any difficulty as to the proportions in which they were to share, the dispute was among themselves, and not with him. . . . This being the controversy in Kentucky, the decree of that court, apportioning the sum recovered among the several representatives, does not alter its character when renewed in Iowa. So far as the appellant is concerned, the entire sum found due by the Kentucky court is in dispute. He disputes the validity of that decree, and denies his obligation to pay any part of the money. And if the appellees maintain their bill, he will be made liable to pay the whole amount decreed to them. This is the controversy on his part, and the amount exceeds two thousand dollars. We think the court, therefore, has jurisdiction on the appeal."

In *Ex parte Baltimore & Ohio Railroad*, 106 U. S. 5, 6, after referring to certain cases in which it had been held that when in admiralty distinct causes of action in favor of distinct parties, growing out of the same transaction, are united in one suit according to the practice of the courts of that jurisdiction, distinct decrees in favor of or against distinct parties cannot be joined to give this court jurisdiction on appeal, it was said: " The cases of *Shields* v. *Thomas*, 17 How. 3 ; *Market Com-*

*pany* v. *Hoffman*, 101 U. S. 112 ; and *The Connemara*, 103 U. S. 754, relied on in support of the present application, stand on an entirely different principle. There the controversies were about matters in which the several claimants were interested collectively under a common title. They each had an undivided interest in the claim, and it was perfectly immaterial to their adversaries how the recovery was shared among them. If a dispute arose about the division, it would be between the claimants themselves, and not with those against whom the claim was made. The distinction between the two classes of cases was clearly stated by Chief Justice Taney in *Shields* v. *Thomas,* and that case was held to be within the latter class. It may not always be easy to determine the class to which a particular case belongs, but the rule recognizing the existence of the two classes has been long established."

The rule announced in *Shields* v. *Thomas* has been recognized in later cases. *Estes* v. *Gunter,* 121 U. S. 183, 185 ; *Gibson* v. *Shufeldt,* 122 U. S. 27, 33 ; *Clay* v. *Field,* 138 U. S. 464, 479 ; *New Orleans Pacific Railway* v. *Parker,* 143 U. S. 42, 51.

Another ground of the motion to dismiss is that a decree of affirmance without specifying the sum for which it is rendered is not a final decree or judgment from which an appeal or writ of error will lie. This position is not tenable. For the purpose of a writ of error to the Circuit Court of Appeals the judgment of the Circuit Court was final, because it terminated the litigation between the parties. The judgment of affirmance in the Circuit Court of Appeals involved the same matter in dispute that was determined by the judgment of the Circuit Court, and was final for the purposes of a writ of error to this court. Upon the affirmance in the Circuit Court of Appeals of the judgment of the Circuit Court, the latter court would have nothing to do except to execute its own judgment. And so, upon the affirmance by this court of the final judgment of the Circuit Court of Appeals, the matters in controversy between the parties are concluded, and nothing will stand in the way of the execution of the judgment of the Circuit Court.

2. On the part of the defendant it is contended that the plaintiff utterly failed to prove that Gentry was killed by a flat car coupled in front of a locomotive, as they alleged in their petition, or that his death was due to any negligence of the defendant; consequently, that the court should have directed a verdict for the defendant; that the undisputed facts of the case not only did not establish any actionable negligence on the part of the defendant, but, on the contrary, negatived such negligence; and that the court erred in instructing the jury that there was no dispute as to the cause of Gentry's death, and in allowing testimony to be introduced on that assumption.

The court did not err to the prejudice of the defendant, in saying to the jury that there was no dispute that Gentry was run over and killed by a flat car of the defendant propelled by a switch engine in its yards at Big Springs. Although no one saw the deceased, at the moment of his being run over, yet, under the evidence, all of which is before us, it was not possible for the jury to have doubted that the deceased was killed in the way stated by the court. If the jury had returned a verdict upon the theory that the evidence did not show that the deceased was killed by being run over by defendant's flat car coupled to one of its engines, it would have been the duty of the court, on motion, to set aside the verdict and grant a new trial. The fact of death in that mode was so clearly established that, if the case had turned alone upon that point, the court would have been authorized to direct a verdict for the plaintiffs. We think the court meant nothing more than that the fact of death being caused in the mode stated by it was placed by the evidence beyond dispute. If more was intended; if the court erroneously assumed that the defendant admitted the fact to be as stated, no error was committed to the substantial prejudice of the defendant; for, as already said, the evidence authorized a peremptory instruction that Gentry was killed by being run over by a flat car attached to one of defendant's engines.

Equally untenable is the proposition that the evidence did not tend to show actionable negligence on the part of the

defendant, and that the jury should have been so instructed. Whether the road engine and flat car used by the defendant on the occasion of Gentry's death were reasonably safe and fairly adapted for switching purposes, or were unsafe by reason of the way in which the light from the headlight on the engine struck the flat car and track of the road; whether, if the appliances used by the defendant for switching were found to be unsafe for such purposes, the deceased had full knowledge that they were not reasonably adapted to the uses to which they were put; whether the deceased, by his own negligence, contributed to his death — these matters were all submitted to the jury. And they were submitted with the direction to consider all the evidence in the case, and under an injunction that the defendant was not responsible for any negligence on the part of the fellow-servants of Gentry operating the switching train that killed him, and was only responsible in the event the jury found from all the evidence on the subject — "such as the opinion of the witnesses, the custom of this particular road, the effect of attaching flat cars, the effect of the engine light in lighting up the flat car and track, the effect of the pilot" — that the switching machinery or appliances furnished and used by the company were unsafe to be used. If, looking at all the evidence and drawing such inferences therefrom as were just and reasonable, the court could have said, as matter of law, that the plaintiffs were not entitled to recover, an instruction to find for the defendant would have been proper. *Pleasant* v. *Fant,* 22 Wall. 116, 121; *Montclair* v. *Dana,* 107 U. S. 162; *Randall* v. *Baltimore & Ohio Railroad,* 109 U. S. 478. If the evidence had been so meagre as not, in law, to justify a verdict for the party upon whom the burden of proof rested, the court would have been in the line of duty if it had so instructed the jury. *Sparf & Hansen* v. *United States,* 156 U. S. 51, 109. No such course was proper in this case, which was one peculiarly for the jury under appropriate instructions as to the principles of law by which they were to be guided in reaching a conclusion.

3. One of the assignments of error relates to the refusal of the court to give the following special instructions asked by

the defendant: "You are instructed that it is the duty of an employé or any other party, about to cross a railroad track, to look and listen for passing engines, cars or trains, to ascertain whether or not same are approaching before going upon the track, and if the party fails to exercise such care, he cannot recover. You are, therefore, instructed that if the deceased, L. D. Gentry, by looking or listening, could have known of the approach of the engine and car and in time to have kept off the track and prevented the injury to himself, and that he failed to do so, you will find for defendant."

It is undoubtedly true, as claimed by the defendant, that the deceased was under a duty not to expose himself recklessly when about to cross the track of a railroad. In *Railroad Co.* v. *Houston*, 95 U. S. 697, 702, this court, after referring to certain acts of negligence upon the part of a railroad company which were alleged to have caused personal injuries, said: "Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger." To the same effect are *Scholfield* v. *Chicago, Milwaukee & St. Paul Railway*, 114 U. S. 615, 618, and *Aerkfetz* v. *Humphreys*, 145 U. S. 418. But the present case did not admit of or require an instruction upon this special subject. There was no evidence upon which to rest such an instruction. As already stated, no one personally witnessed the crossing of the track by the deceased, nor the running of the flat car over him. Whether he did or did not stop, and look and listen for approaching trains, the jury could not tell from the evidence. The presumption is that he did; and if the court had given the special instructions asked, it would have been necessary to accompany it with the statement that there was no evidence upon the point, and that the law presumed that the deceased did look and listen for coming trains before crossing the track.

In *Continental Improvement Co.* v. *Stead*, 95 U. S. 161, 164, the court, speaking by Mr. Justice Bradley, upon the subject

of the relative rights and duties of a railroad company and the owner of a vehicle crossing its track, said : "Those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if collision happen; and hence it will not be presumed, without evidence, that they do not exercise proper care." This principle was approved in *Baltimore & Ohio Railroad* v. *Griffith*, 159 U. S. 603, 609. Manifestly it was not the duty of the court, when there was no evidence as to the deceased having or not having looked and listened for approaching trains before crossing the railroad track to do more, touching the question of contributory negligence, than it did, namely, instruct the jury generally that the railroad company was not liable if the deceased by his own neglect contributed to his death, and that they could not find for the plaintiffs unless the death of the deceased was directly caused by unsafe switching appliances used by the defendant, and without fault or negligence on his part.

The counsel for the defendant in their elaborate brief say : "Plaintiffs below cannot claim that the headlight of the engine did not illuminate and make plain to any one the flat car. They may contend that the headlight blinded the deceased. If this be true, he knew that switch engines with flat cars attached in front and behind them were continuously moving in and about the yard, and if the light did blind him he knew then and there the blinding effects thereof, and it was as careless for him to step upon the track just in front of a car as it would have been for a blind man to have so acted. We submit that if he was blinded by the headlight that he was guilty of the grossest negligence, being blinded, in walking upon the track under the existing circumstances. We submit, however, that the evidence shows without contradiction that, by the exercise of ordinary care, he could have seen the flat car. We submit that a blind man who would attempt to cross the track just in front of the engine, the puffing and blowing of which he could hear, hoping to get across the track before the engine could strike him, would be guilty of the grossest negligence.

In this case the deceased was not blind. He could see the engine with its headlight illuminating fifteen or twenty feet of the flat car next to the deceased, and lighting up the track for some distance ahead."

It is sufficient to observe that the evidence touching the matters referred to by counsel was not so clear and satisfactory as to justify the taking of the case from the jury upon the issue whether the deceased exercised due care under the circumstances which attended the occasion. It was properly left to the jury to determine whether, under all the circumstances, the effect of the headlight and flat car combined was to make the situation secure and safe to one who saw the headlight, but did not see the flat car in front of the locomotive. "What may be deemed ordinary care in one case," this court has said, "may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." *Grand Trunk Railway* v. *Ives*, 144 U. S. 408, 417.

*We find no error of law to the prejudice of the plaintiff in error, and the judgment is affirmed.*