Mr. Chief Justice Alvey
delivered the opinion of the Court:
There are three questions raised on the rulings of the court below, and which have been argued on this appeal, and they are the following:—
1. Whether the plaintiff was entitled to proceed with the action and recover judgment therein against the defendants, as receivers, after the passage of the order of June 30,1899, set out in the plaintiff’s replication; or whether the claim for the damages sued for should be filed in the cause in the equity court, in which the receivers were appointed, to be there adjudicated under the order referred to.
2. Whether the defendants were entitled to any other or different instruction from the court than that given in respect to a supposed variance between the allegation and proof, as to the location where the accident occurred.
3. If the cause was properly triable by the court below, whether the evidence of contributory negligence on the part of the deceased, Merriman, was so clear and unmistakable in its character, as to require the court to direct a verdict for *197 the defendants; — it being conceded that there was proof sufficient on the question of negligence by the defendants, or their employees, to require the case to be submitted to the jury, but for the supposed contributory negligence of the deceased in causing the accident.
1. It is contended by the defendants that the order of the court of equity of June 30, 1899, withdrew the property of the railroad company from their possession and control, and had the effect of discharging the receivers from any further liability for the claim sued for in this action; and that the only recourse of the plaintiff is by making application to the court of equity, having control of the cause in which the receivers were appointed, for an adjudication and allowance of the claim. We do not, however, entertain this view of the case.
The court below had acquired complete jurisdiction of the subject-matter of the suit and of the parties thereto, before the order of the 30th of June, 1899. The action was authorized to be brought without the authority of the court appointing the receivers; and the fair and reasonable interpretation of the act of Congress of March 3, 1887 (24 Stat. 552, Oh. 373), as corrected by the act of Congress of August 13, 1888 (25 Stat. 433, Ch. 866), is, that the remedy against receivers was not only to be protected, but promoted and made effectual by that act. The act provides that every receiver, appointed by a court of the United States, may be sued in respect of any act or transaction of his in carrying on the business connected with the property, without the previous leave of the court by which such receiver was appointed. It has been held by the Supreme Court of the United States, that such suit may be brought in any court of competent jurisdiction and proceed to judgment accordingly. Texas & P. Railway Co. v. Johnson, 151 U. S. 81, 101. In this case the question is not presented as to the power of the court to proceed in the action instituted against receivers while they are in control and management of the property *198 of an alleged insolvent corporation, and where they have been finally discharged from the receivership, and required to deliver up all control over the property, before trial and judgment had against them. Here the receivers were not discharged from th^ir trust by the order of June 30, 1899, and the property of the railroad company, though required to be surrendered and placed back into the possession and control of the corporation, yet was still held subject to the power and jurisdiction of the equity court to enforce all the powers and conditions enumerated in the order of June 30, 1899. By that order, as we have seen, it was expressly provided and reserved, as a continuing right and power, “to adjudge and declare what receivers’ or corporate debts are due and ought to be paid by the said railroad company, with full power by its future adjudications to bind the property, the possession of which is delivered under this order.”
The property of the railroad company, therefore, remained subject to the control and jurisdiction of the court of equity that appointed the receivers; and the property under the control and jurisdiction of. the court is the source from which payment of any judgment, in a case like the present, against the receivers, must be sought. The judgment is not recovered against the receivers personally, but against them in their official character as receivers, and the judgment is payable only from the funds in their hands or that may remain subject to the jurisdiction and direction of the court that appointed the receivers. This being the case, it is difficult to perceive any substantial reason why the action should not proceed to judgment against the receivers in their official character, or why the order of the court directing the property to be delivered to the possession of the railroad company, but without discharging the receivers, should be allowed to have the effect either to abate or stay the action, or to form an obstacle to the recovery of a judgment against the receivers. The judgment when recovered can only be made available by applying to the court that *199 appointed the receivers, and which has power and jurisdiction over the funds out of which the judgment can be paid.' It is to this end that the act of Congress, to which we have referred, provides that “such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed so far as the same shall be necessary to the ends of justice.” The plaintiff in the action is entitled to have his case tried by a jury, and the damages regularly assessed; and it is not to be supposed, in the absence of express terms, that Congress intended, by the act referred to, to deprive the plaintiff of such right. As said by the Supreme Court, in the case of Texas & P. Railway Co. v. Johnson, supra, “Certainly, the preservation of general equity jurisdiction over suits instituted against receivers without leave does not, in promotion of the ends of justice, make it competent for the appointing court to determine the rights of persons who are not before it or subject to its jurisdiction; and the right to sue without resorting to the appointing court, which involves the right to obtain judgment, can not be assumed to have been rendered practically valueless by this further provision in the same section of the statute which granted it.” It is only after the judgment recovered that the plaintiff is required to go to the equity court having jurisdiction over the property or funds from which he can obtain satisfaction. It is in that court that the equities between incumbrancers and other creditors are to be adjusted, and the time and manner of payment determined. Dillingham v. Hawks, 60 Fed. Rep. 494, 497.
We are clearly of opinion that the action was properly proceeded with to trial and judgment, notwithstanding the order of the equity court of June 30,1899.
There was irregularity in entering the judgment, but that was in mere' matter of form. The judgment, instead of being entered against the receivers personally, as appears to have been done, should have been entered against them in their official character as receivers. This, however, as there *200 was no objection to the form of the judgment in the court below, will not affect the judgment on appeal. The judgment will be construed, in such case, with reference to the pleadings and the character in which the defendants were sued. 17 Ency. Plead. & Prac., 804, and the cases there cited.
2. The next question is that which relates to the supposed variance between the allegations and proof. In relation to this subject, the defendants offered two prayers for instruction, the seventh and eighth in the series of prayers offered by them. The seventh was granted and the eighth refused. By the granted prayer, the jury were instructed, that if they found from all the evidence that the deceased was walking along the railroad tracks, instead of across them, and while so walking was struck and injured, then the plaintiff could not recover.
By the eighth prayer, the defendants sought to have the jury instructed, that if they should find from all the evidence that the deceased received the injuries which caused his death while crossing the railroad tracks at a point which was not a street crossing, then the plaintiff was not entitled to recover in this action. This prayer, in view of the allegation in the declaration as to the location of the place where the accident occurred, was calculated to mislead the jury, and therefore properly rejected. The declaration alleges the place of the accident to be “ at or near a point where L street northeast crosses the tracks of said railroad in the city of Washington.”
The court below, in its general charge to the jury, instructed them, “ that the declaration avers that this injury occurred to the plaintiff’s intestate at or near the L street crossing. The proof in the case, in order to entitle the plaintiff to recover, must show that that averment of the declaration is substantially true. It is not necessary that it should appear that he was exactly and technically upon the crossing, but that he was substantially using the crossing, and *201 so near to it as to be practically the same thing as though he were actually on the crossing; so that the use of the gates, for instance, would be notice which would be received from them, so that it would be shown that his purpose was to cross at that crossing in the ordinary and usual way. If that was his purpose, and he was at or near the crossing— so near as to be practically the same thing as if he was upon the crossing, — then the averment of the declaration would be sustained; and if all other things are proven which the court has charged yon must be proven to entitle the'plaintiff to recover, your verdict should be for him if you find that the injury was received by the plaintiff’s intestate at or near the L street crossing. But if it was away from the L street crossing so that it could not be said that he was attempting to cross the railroad practically at that crossing, then, as I have already in substance charged you, the averment of the declaration would not be sustained — it would not be the same cause of action which is set foi’th in the declaration, — and the plaintiff would not be entitled to recover.”
This is a full and a clear instruction upon the subject, and it was all that the defendants could rightly insist upon. There was nothing in the charge thus delivered to the jury that unduly varied or enlarged the ground of recovery as laid in the declaration.
3. With respect to the third question, that relating to the alleged contributory negligence of the deceased, there is more ground for real contention. Upon the subject of the alleged contributory negligence as a defense to the action, the court, while refusing to direct a verdict for the defendants, granted several prayers offered by the defendants, which instructed the jury in the most explicit and unqualified terms in favor of the defense. It is to the granting of the second prayer of the plaintiff upon this subject, and to the refusal to grant the ninth and eleventh prayers of the defendants, which relate to the same question, that the defendants have *202 excepted, and which they make the ground for the assignment of error.
It is conceded on the part of the defendants that there was sufficient evidence of negligence by the defendants, or their employees, to require the case to be submitted to the jury, if the evidence of contributory negligence of the deceased was not of a character so-manifest and plain as to preclude all reasonable doubt upon the subject, and to require at the hands of the court a decisive and unqualified instruction that the verdict should be entered for the defendants. Such direction involves the exercise of the very strongest powers that a court can be called upon to exert over the trial by jury. In cases like the present, where, after all the elements to entitle the plaintiff to recover have been shown in proof, and upon such proof it is conceded that the case would have to be submitted to the jury, then to overcome and defeat the effect of that evidence, by proof of contributory negligence on the part of the deceased, requires proof of the most conclusive and unmistakable character to justify the court in assuming to pass upon the question of contributory negligence as one of law, and to direct a verdict for the defendant. It is only where the evidence of contributory negligence is of the most unmistakable character that the court can so interpose; and the burden of proof of such contributory negligence is upon the defendants.
“When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the question is matter for the jury. It is only where the facts are- such that reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court.” Texas & P. Railway Co. v. Gentry, 163 U. S. 353, 366.
In this case it may well be contended that the proof of contributory negligence on the part of the deceased is strong, and many reasonable minds might be decidedly inclined to *203 conclude from it that the deceased was guilty of contributory negligence in causing the accident. But the state of proof is such that we can not say that all reasonable men would so conclude. The court below thought the evidence was not conclusive, and the jury concluded that the evidence was not sufficient to establish the fact that the deceased, by his own fault and want of caution, contributed to the production of the disaster. The testimony in the case is, in many^ respects, conflicting, and involves, to a considerable extent, the credibility of witnesses. It is shown, however, that the condition of things existing at the crossing of the road at L street, where the accident occurred, was not favorable to entire safety to those using the crossing. It was near midnight that the accident occurred ; the weather was blustering, and there was no moonlight, and some of the witnesses speak of the night as cloudy and dark, but others say it was clear. The gates at the crossing were raised, and there was no watchman or light at the crossing. There was a passenger train coming into Washington that passed over the crossing just before the deceased reached it and attempted to pass over it. At the same time, coming out of Washington and going in the direction of Baltimore, were an engine and tender, and the proof is conflicting as to whether this engine and tender were running head or tender foremost. It was this engine with the tender that collided with the deceased and caused his death ; the collision occurring at or near about the crossing. The meeting and passing in opposite directions of the passenger train, going into Washington, and the engine and tender going in the direction of Baltimore, occurred west of, but not very far from the crossing of L street. Some of the witnesses speak of smoke emitted from the passenger train, but others do not seem to have observed it. There were no bells rung nor whistles blown, either by the passing passenger train or the engine with the tender; but that was forbidden by the police regulation of the city of Washington, and therefore the defendants were *204 not responsible for the omission of such signals. The absence of such signals, however, maj^, in connection with other circumstances, be considered as influencing the conduct of the deceased in his approach to the crossing. The locomotive and tender, as the witnesses say, were running “extra,” or wild, and not on regular time; and while some of the witnesses swear that the tender was run foremost, or that the engine was running backward, others swear that it was not, and several of the witnesses swear that there was no light to be seen on the forward end of the tender. No witness saw the accident as it actually happened. The witness McDonnell swears that he saw the deceased approaching the crossing, and saw him in the act of stepping on or over the north track of the road, but he did not see him struck by the locomotive or tender, that were then just passing over the crossing. Whether he did or did not look and listen for the approach of trains, before stepping upon the tracks, nowhere appears from the evidence, except as it may be inferred; and in the absence of negative evidence, or evidence that he did not look and listen for the approach of trains, the presumption would be that he did. Texas & P. Railway Co. v. Gentry, 163 U. S. 353, 366. It is certainly clear that the deceased was under a duty not to expose himself recklessly when about to cross the railroad tracks, even at a regular crossing; nor would the negligence of the defendants justify negligence on the part of deceased. Texas & P. Railway Co. v. Gentry, supra. The rule upon this subject is very clearly stated by the Supreme Court of the United States, in Continental Improvement Co. v. Stead, 95 U. S. 161, 164, referred to with approval in 163 U. S. 367, where it is said that “Those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if collision happen; and hence it will not be presumed, without evidence, that they do not *205 exercise proper care.” This principle is also laid down with approval in Baltimore & Ohio Railroad Co. v. Griffith, 159 U. S. 603, 609.
Under the facts of this case, we do not see that the court below could have done otherwise than it did, touching the question of contributory negligence- of the deceased, and that was, to instruct the jury fully and clearly, as was done by granting the defendants’ third, fourth, fifth, sixth and seventh prayers, that the defendants were not liable if the deceased by his own fault or neglect contributed to his death, and if they should so find their verdict should be for the defendants.
We find no error in any of the rulings of the court below to which exception was taken, and its judgment must, therefore, be affirmed; and it is so ordered. Judgment affirmed.