## COLLISION BETWEEN INTERURBAN CAR AND VEHICLE AT STREET CROSSING.

Court of Appeals for Delaware County.

ELI M. WEST, AS RECEIVER OF THE COLUMBUS, DELAWARE & MARION RAILWAY CO., v. WALTER H. GILLETTE, AS ADMINISTRATOR OF THE ESTATE OF ALBERT N. GILLETTE, DECEASED.

Decided, May Term, 1915.

*Negligence—Vehicle Struck by Car at Street Crossing—Car Three Hundred Feet Distant When Driver Attempted to Cross Track—Proximate Cause of Collision—Not Error to Overrule Motion to Arrest from Jury, When—Application of Doctrine of Last Chance.*

1. Actions for personal injuries should be submitted to the jury, where there is evidence tending to show negligence on the part of either party, or where material and important facts affecting the right of recovery are in issue.

2. Where a motorman, having discovered a vehicle three hundred feet ahead about to cross the track at a street crossing neglected to slacken the speed of his car or bring it under control—knowing that the driver of the vehicle having arrived first might stand on his right to pass over the crossing first, and might fairly assume that the car would approach the crossing at a rate of speed which would not endanger those in the act of passing over the tract—the failure of the motorman to bring his car under control in time to avoid striking the vehicle constitutes the proximate cause of the resulting collision.

3. The averments of the petition in the present case, which are set out in the opinion, warranted the court in instructing the jury on the doctrine of the last chance.

*Harry F. West* and *Hough & Jones,* for plaintiff in error.
*Marriott, Freshwater & Wickham,* and *George C. Snyder,* contra.

SHIELDS, J.; POWELL, J., and HOUCK, J., concur.

This was an action brought in the Court of Common Pleas of Delaware County, Ohio, by Albert N. Gillette's administrator to recover damages against Eli M. West, as receiver of the Co

lumbus, Delaware & Marion Railway Company, for the death of the said Albert N. Gillette, alleged to have been caused by the neglect of the said railway company while the said Albert N. Gillette, on the 11th day of January, 1913, was driving his horse attached to a buggy upon and over the crossing of Olentangy avenue and Sandusky street within the corporate limits of the city of Delaware, Ohio.

The negligence charged in the plaintiff's petition filed in the court below was, in substance, that the motorman in charge of one of the interurban cars of said railway company, in operating the same between the said city of Delaware and the city of Columbus, Ohio, in the afternoon of said day, when approaching said crossing at down grade from the summit of an elevation some three hundred feet distant therefrom, and when in full view of the said Albert N. Gillette while driving on said Olentangy avenue up to and upon said crossing and in an effort to cross the same, carelessly, negligently and unlawfully run said car at a high, reckless and dangerous rate of speed in utter disregard of the rights of the said Albert N. Gillette upon said crossing, without giving warning by whistle or otherwise of the approach of said car to said crossing, which said car struck the horse and carriage of the said Albert N. Gillette, with great force and violence when upon said crossing, throwing him out of said carriage upon the ground, causing concussion of the brain and great internal injuries, from the effects of which he died. Other averments of negligence in connection with the killing of said Albert N. Gillette at said time and place were contained in said petition, which appear in the discussion of the facts in this opinion. Damages in the sum of ten thousand dollars were prayed for.

In his answer to said petition said receiver admits that the said Albert N. Gillette collided with one of the cars operated by the defendant as receiver, at the time and place stated, and that he died shortly thereafter, but denies all the other allegations of said petition. He further avers that if upon the trial it should appear that the defendant was guilty of negligence as charged in said petition, that the decedent was guilty of negligence directly contributing to his injury and death, in that he

started to cross the tracks of the defendant at the point of the collision without first exercising care to discover the approach of the car of the defendant.

For a reply to the second defense in said answer the plaintiff denied all the allegations therein charging negligence directly contributing to the injury of the said decedent.

Trial was had upon the issues thus made resulting in a verdict and judgment for the plaintiff. A petition in error with a bill of exceptions containing the evidence taken upon the trial, including the charge of the trial court to the jury, was filed in this court for a reversal of said judgment.

Numerous assignments of error are contained in said petition in error, but we will consider more particularly such as were urged upon the attention of this court and upon which the plaintiff in error relies.

It was urged that the court below erred in overruling the motion of the plaintiff in error for an instructed verdict in its favor at the conclusion of the evidence introduced in behalf of the plaintiff below and again renewed at the close of all the evidence in the case. We think the law is well settled in this state as to the duty of the trial court where a motion is interposed in a case to direct a verdict, or for non-suit, the authorities holding with practical unanimity that where there is evidence tending to prove negligence of one party or the other, the case should be submitted to the jury.

In *Stockstill* v. *Dayton & Michigan R. R. Co.*, 24 O. S., 83, it is held that:

"If the evidence *tends* to prove all the facts which it is incumbent on the plaintiff to establish in order to maintain his action, he has a right to have the weight and sufficiency of the evidence passed upon by the jury, and it is error for the court to grant the motion and render a judgment against him."

In *Dick* v. *Railroad Co.*, 38 O. S., 389, it is held that:

"A motion to arrest the testimony from the jury and render a judgment against the party on whom the burden of proof rests, involves an admission of all the facts which the evidence tends to prove and presents only a question of law for the court;

but if there is evidence tending to prove each material fact put in issue, and indispensible to a recovery, it should be submitted to the jury under proper instructions.''

In *Gibbs* v. *Village of Girard*, 88 O. S., 34, it is held that:

''A cause of action for damages brought against a village for negligence in the care of its sidewalks, by reason of which it is claimed plaintiff was injured, presents a jury issue if there is some evidence tending to prove every essential fact necessary to entitle plaintiff to recover; and an order of the trial judge at the close of the plaintiff's case directing a verdict in favor of defendant over the objection of such plaintiff is a denial and violation of the right of trial by jury and therefore reversible error.''

And Judge Wanamaker speaking for the court in said case on page 47 says:

''So long as the trial by jury is a part of our system of jurisprudence its constitutional integrity and importance should be jealously safe-guarded. The right of trial by jury should be as inviolate in the working of our courts as it is in the wording of our constitutions..''

From the foregoing and from numerous other like decisions by the courts of this state, it will be seen that the duty of the trial court is made clear in a case on a motion to direct a verdict wherein the evidence tends to support the material allegations charged in the petition. Applying this rule of law to the facts in the case at bar, was the action of the trial court in overruling said motion within the limitations of said rule? An examination of the record shows there was no little conflict in the evidence in reference to at least some of the material facts put in issue, namely, the rate of speed at which the car in question was being operated, the gait at which the horse of the decedent was being driven, and the location of the horse and carriage at the time of the accident, all of which were material and important facts as affecting the right of recovery by the defendant in error, and in the light of the foregoing citations we are of the opinion that the action of the court below in overruling said motions was proper.

It was also urged that the verdict of the jury is clearly against the weight of the evidence, because it was contended that the decedent's death was the result of his own negligence and was not wholly due to the negligent act or acts of the motorman in charge of said car. Not unlike most cases of this character, the liability of this company here, if any, depends upon a very few controlling physical facts in the case, and the law when applied to such facts ought not to render the case difficult of solution. An examination of the evidence contained in the bill of exceptions shows that as one of the defendant's interurban cars reached the summit of the elevation north of the intersection of Olentangy avenue and Sandusky street at said crossing, a distance of about 325 feet, the motorman in charge of said car saw the decedent's horse and carriage, with the curtains on said carriage and a rain-apron fastened in front of the seat of said carriage, through which said apron was an opening for the handling of the lines upon said horse, approaching the tracks of said railway, on said avenue, and while in the act of crossing said railway tracks said car collided with said horse and carriage resulting in the death of said Albert N. Gillette. The motorman testified that as said car left the summit of said elevation and descended towards said crossing said horse was walking on said avenue and was about fifty feet distant from said railway tracks on said crossing, that said car was then running from eight to ten miles an hour, that upon sounding the whistle on said car and noticing that no apparent heed was being given to it, he sounded further danger warnings, and when said car was about one hundred and fifty feet from said crossing, acting upon what he assumed to be a checking or stopping of the horse "just as he was about to cross the tracks," he released the air and as said car passed over said crossing it collided with said horse and carriage. That a drizzling rain was falling on said day which rendered the surface of the tracks of said railway company wet and slippery. He further testified that he was familiar with the surroundings at said crossing, that he passed over said crossing some six times daily in making his runs to and from Columbus, that he knew there was a hedge fence on the north side of the traveled portion of said Olen-

tangy avenue and that said crossing was known to be dangerous. That the whistle on said car was sounded substantially as claimed by the motorman does not seem to be disputed, nor is the distance that said decedent was seen to be traveling toward and near to said crossing with said horse and carriage as said car descended said hill or elevation seriously in dispute, although the testimony of the motorman in this respect is not wholly borne out by persons aboard said car as passengers, especially as to the distance of said car from said crossing when the last danger signal was given and the position of the horse and carriage *at that time,* the main conflict of testimony being as to the rate of speed said car traveled from the summit of said elevation to and over said crossing. Joshua Stickney, a witness for the plaintiff, who was a passenger on said car, testified, in substance, that when said car descended said elevation from the summit thereof to said crossing it was running twenty miles an hour or more, that there was no change in the rate of speed traveled by said car during said distance. That when said car was within seventy-five feet of said crossing there was a sharp, shrill whistle blown when he jumped up from his seat, that he looked out through a window and saw the carriage about seventy-five feet from the crossing. That the horse was then jogging on a trot and when he again looked out, the carriage was then from twenty to twenty-five feet from the crossing and that it was then that the car seemed to srike it. Other witnesses testified in support of the contentions of both the plaintiff and defendant. The undisputed testimony was that the right hind leg of the horse was broken, that the carriage was demolished, that the body of the decedent was hurled some thirty feet from the crossing, and that he thereafter died from the injuries received in said collision. Was said verdict returned clearly against the weight of the evidence given upon the trial? The plaintiff in error vigorously contended that the evidence fully justified their contention that the decedent's death was wholly due to his own negligence in attempting to pass over said crossing without exercising that degree of care necessary to avoid danger. The rule that a party about to cross a known place of danger is called upon to exercise his senses of sight and hearing

and to do everything that a prudent man would do under similar circumstances to avoid being injured, is held in *C., C., C. & I.* v. *Elliott*, 28 O. S., 340, and in numerous other authorities that might be cited to the same effect, but the last pronouncement by our Supreme Court on this subject in *Traction Co.* v. *Brandon,* 87 O. S., 187, is that the omission to look before going upon a crossing is not negligence in all cases as matter of law. For aught that appears here it may be that the decedent looked before going upon said crossing, and in the absence of proof to the contrary the presumption is that he did so look (*Interurban Railway & Terminal Co.* v. *Hines, Admr.,* 13 C.C.[N.S.], 170; 95 U. S., 161; 163 U. S., 353), and observing the car at such distance as that he supposed and believed that he could safely pass over said crossing, and attempted to cross, if he did, this would not be negligence; or observing said car at the summit of said elevation and his horse and carriage being plainly visible to the motorman in charge of said car, and being first at said crossing, he may have relied upon his right to cross over said crossing before said car, even though the motorman was called upon to slacken the speed of said car, or if necessary, to stop the same to avoid a collision. The first at said crossing, under the facts stated, had the right to cross, for a street car company must operate its cars with reference to the rights of others traveling on a street and over street crossings. The motorman testified that he saw this horse and carriage approaching said crossing when some three hundred feet distant therefrom, and it seems that he saw them plainly, too, for he testified that he even saw the opening in the rain-apron for the lines, and if this is true, did he not have ample time and opportunity to get his car under control before reaching said crossing as to have avoided the injury that followed said collision? Having seen the horse and carriage approaching said crossing at such distance, and about to cross, and on the crossing at the time of the collision, in the face of testimony that there was no change in the speed of the car from the summit of said elevation to said crossing, even in view of the claim of the motorman that the car was running but eight or ten miles an hour and that the horse apparently halted, as claimed, what was left for the jury to do

under proper instructions? Concerning the relative rights of the public and traction companies at street crossings, in *Toledo Street Ry. Co.* v. *Westenhuber*, 22 C. C., 67, the Circuit Court of Lucas County held, in a collision case between a street car and a carriage crossing the tracks of a street railway at the intersection of two streets that:

"1. It is negligence in the motorman of an electric street car when the car is from 150 to 200 feet from a street crossing, and he sees a wagon about to cross the track, not to try to stop or slacken the speed of the car until almost at the crossing, when by so doing the collision which ensued might have been avoided.

"2. It is not negligence in the driver of a wagon to attempt to drive across a street car track ahead of an approaching electric car, when the car is so far away that by the exercise of reasonable care it might be stopped before reaching the place of crossing."

In *Harris* v. *Cleveland Electric Railway Co.,* decided by the Court of Appeals for Cuyahoga County, and reported in 19 C.C. (N.S.), 410, it is held that—

"A street car company has only equal rights with the driver of a horse, or a pedestrian, at a street crossing, and therefore it is the duty of the motorman as he approaches the street crossing to have his car under control and to keep a constant lookout, not only ahead, but also to the right and left, so as to discover persons upon the track or approaching it without noticing or heeding the approaching car, so that he may allow them to pass over in safety."

In *Greve* v. *Cincinnati Traction Co.,* 21 C.C.(N.S.), 331, the Court of Appeals for Hamilton County held that—

"In an action by a driver who was thrown from his seat and injured in a collision between a traction car and his vehicle, it is error to direct a verdict for the traction company, where the evidence tends to show that the vehicle could have been clearly seen by the motorman, crossing from one side of the street to the other, in time for him to have avoided the accident by stopping or checking the speed of the car."

In *L. S. & M. S. R. R.* v. *Schade, Admr.,* 15 C. C., 424, it is held that—

"If the decedent in this case was negligent in going upon the track in the manner and at the time he did, yet if the engineer in charge of the train ought, by the exercise of ordinary care, to have seen the decedent in his perilous position, and could, by the exercise of ordinary care, have stopped or checked the speed of the train so as to avoid a collision, and failed to do so, it was negligence for which the company is liable, notwithstanding the negligence of the decedent in going upon the track.

"If the decedent was negligent in going upon the track as he did, yet if after such negligence the persons in charge of the train, by the exercise of ordinary care, could have seen the decedent in his dangerous position and stopped or checked the speed of the train and avoided the injury, and they failed to do so, they were guilty of negligence, and such negligence is the proximate cause of the injury, and the railroad company is liable."

The same rule was also followed by the circuit court in this district in the case of *Mansfield Railway, Light & Power Co.* v. *Kiner*, reported in 17 C.C.(N.S.), 431, which was affirmed by the Supreme Court.

And in *Traction Co.* v. *Brandon, supra*, page 196:

"It is not negligence in the driver of a vehicle to attempt to cross a street car track ahead of an approaching car so far away that by the exercise of reasonable vigilance on the part of the motorman it might be stopped or checked before reaching the crossing."

It would seem that the foregoing adjudications ought to be decisive of the rights of the public and street car companies at street crossings, but it is contended that the evidence shows that the death of the said Albert N. Gillette was caused by his own negligence—that his negligence contributed to his injuries and consequent death. As already stated, when about to enter upon said crossing he may have relied on the presumption of said car being at such distance, and under control of the motorman, especially when running down grade, as that he could safely pass over it, or, having been first at said crossing and said car being some three hundred feet distant and presumably traveling at such speed as that the motorman would not be unmindful of the rights of the public at said crossing, he attempted to cross,

or he may even have been guilty of negligence in driving upon said crossing, but if the motorman after having seen the horse and carriage at the place and in the condition stated by him, and if after having seen the peril of the decedent, if he did, and he then had time and opportunity to avoid a collision between said car and said horse and carriage by checking or even stopping said car, and he neglected to do so, would not such neglect be actionable negligence and be regarded as the proximate cause of the said Albert N. Gillette's death? If guilty of such neglect, we think a liability would follow from the rule laid down in *Traction Co.* v. *Brandon, supra,* which appears to have been followed by the trial court in its instructions to the jury.

It was urged on the part of the plaintiff in error that it was impossible for the motorman to avoid said collision because of the close approach of said car to said crossing and because of the slippery condition of the surface of the tracks of said railway after the apparent halting of said horse and after the motorman released the air of said car. The inquiry naturally arises that if the tracks were slippery, would not such fact require increased vigilance on the part of the motorman to see to it that the car be kept under safe control? Such inquiry would seem pertinent when it is considered that said car was running down grade according to the testimony of Engineer Core, just prior to reaching said crossing. In commenting upon the necessity of a motorman keeping a car under control when descending a grade, Thompson in his *Commentaries on the Law of Negligence,* Volume 2, Section 1395, says:

"Upon the question what rate of speed is to be deemed unreasonable or dangerous, no exact definition can be made; but the obvious conclusion of reason is that a rate of speed which *prevents the motorman from maintaining control of his car* so as to stop it within a reasonable distance upon an appearance of danger to others, falls within this category, and, on the other hand, that a rate of speed which, although greater than usual, does not prevent the motorman from keeping his car well in hand, and does not endanger persons using the street with reasonable care for their own safety, is not negligent or blameworthy. The true view is that the railway company must not

adopt such a rate of speed as will prevent its motorman from keeping control of the car, especially *upon a down grade,* and if a car can not otherwise be kept under control, the *sanding* of the tracks may be regarded as a reasonable means to be adopted for that purpose, the failure to resort to which may be negligence."

But as we view it, this was a question of fact, including the conduct of the motorman in respect to the speed at which he was operating said car between the summit of said elevation and said crossing as tending to show whether or not he was exercising reasonable care in the management of said car, and including also the circumstances under which said decedent drove upon said crossing for the purpose of passing over the same, all of which were questions of fact as bearing upon the alleged negligence of the defendant, or contributory negligence of the decedent, which were to be submitted to and determined by the jury under proper instructions (*Gibbs* v. *Village of Girard,* 88 O. S., 34-44). Upon a review of this record we are of the opinion that said verdict is not clearly against the weight of the evidence, nor is the same unsupported by evidence sufficient to warrant said verdict.

It was urged that the court below erred in its instructions upon the law to the jury, and upon a request made for further instructions that said court further erred in repeating such erroneous instruction to the jury. It appears that after said court had instructed said jury and after they had retired for deliberation they requested further instructions by said court, as appears by the following on page 115 of the record:

"Thereupon at 10 A. M. the jury retired to their room for deliberation, and at 1:30 P. M. the jury returned into court and asked for further instructions.

"By the Court: Gentlemen of the jury, the bailiff has instructed the court that the jurors have requested the court to give them further instructions on the law of this case. Is that correct, Mr. Foreman?

"Mr. Foreman (Mr. Willis): The jury merely wish to ask the court to read the part of the charge referring to a similar case where negligence may be found on both sides. It was not understood by all of the jurors, whether deficient ears or memory we don't know.

"By the Court: I will read it to you, gentlemen, having it in pencil form before me, that part of the charge which has been requested by your foreman:

" 'In other words, gentlemen of the jury, the decedent, Albert N. Gillette, may have been guilty of negligence in driving upon this track as he did, yet such negligence will not defeat the right of the plaintiff to recover, if the motorman saw the danger in which he was placed in time to have avoided colliding with him by the exercise of reasonable care and by the use of all the means at his command, and negligently failed to exercise such reasonable care. That is, if you find that there was negligence upon the part of the railway company, and negligence upon the part of Gillette, in driving upon this track in front of an approaching car, then you will proceed and examine the conduct of the motorman after he had discovered, or by the exercise of ordinary care ought to have discovered, the danger in which the said Albert N. Gillette was at the time. As we have said, it was the duty of the motorman to have his car under control; that is, the car must be in the power of the motorman to such an extent as that when he saw this horse and buggy on the track, or when by ordinary care in his duty of looking for vehicles he ought to have seen this horse and buggy on the track, he could stop his car within a reasonable time and distance so as to avoid, if possible, the collision.' Do you desire the court to read any farther?

"Mr. Foreman: I guess that is sufficient, as far as I am concerned.

"The Court: You may retire."

The foregoing instruction is claimed to be not only erroneous but prejudicially erroneous, for which the judgment below should be reversed. It is claimed by the plaintiff in error that the trial court in giving said instruction sought to introduce and apply the rule of liability under what is known as the "last chance" doctrine when the allegations of the petition of the plaintiff below do not warrant the application of such rule, and that the facts of the case are such as to defeat the right of said plaintiff to recover. What, then, is understood to be the doctrine of the "last chance"? In *Thompson on Negligence*, Volume 2, Section 1629, we find it defined as follows:

"Although a person goes upon a track negligently, yet if the servants of the railway company, *after they see* his danger, can

avoid injuring him, they are bound to do so. And, according to the better view with reference to injuries to travelers at highway crossings, as distinguished from injuries to trespassers and bare licensees upon railway tracks at places where they have no legal right to be, the servants of the railway company are bound to keep a vigilant lookout in front of advancing engines or trains, to the end of discovering persons exposed to danger on highway crossings; and the railway company will be liable for running over them if, by maintaining such a lookout and by using reasonable care and exertion to check or stop its train, it could avoid injury to them.''

This definition appears to have been adopted in *Drown* v. *Traction Co.*, 76 O. S., 234.

Looking at the averments of the petition of the plaintiff below we find that after averring that said decedent approached said tracks to cross the same, and while in the exercise of due care, said car approached said crossing at a high and dangerous rate of speed, it is averred that:

"When the said decedent started across the track of the defendant's railroad, the motorman in charge of the said car could see the decedent starting across or upon the track with his said horse and buggy more than three hundred feet away, and that said motorman knew that at the speed he was running the car, it would strike said horse and buggy before it could cross said track; but plaintiff avers that the decedent did not know the speed of the car and could not learn its speed from his position, and avers that decedent reached the track when the car was at least three hundred feet away, and had a right to cross said track, and that the agents, servants and employees of the defendant had ample time after seeing as they did the decedent crossing the track, to check the speed of the car and stop it and thereby have prevented the collision, and the plaintiff says that the agents, servants and employees of the defendant in charge of said car, negligently, recklessly and wilfully approached said crossing at a high rate of speed and ran against the horse and buggy of said decedent with great force and violence and thereby hurled him from the buggy to the ground.''

These averments, in our judgment, brought the case within the rule stated, and warranted the trial court in submitting said case to the jury under instructions embodying said rule of law.

In giving said instructions the trial court appears to have followed the instructions in the case of *Cincinnati Traction Co.* v *Jennings,* reported in Vol. 7 N.P.(N.S.), pp. 462-466, which case was affirmed by the Supreme Court of this state, without report, October 20, 1908, wherein it is held that—

"It is not error to charge that where the jury have found that both the plaintiff (driver of a cab) and the motorman of the car which collided with the cab were negligent, they may then take into consideration whether the motorman had his car under control to such an extent that he could have avoided the accident after he saw, or by the exercise of ordinary care could have seen, the vehicle on the track.

"Nor is it error to charge that it is not negligence in the driver of a vehicle to attempt to cross a street car-track ahead of an approaching car, when the car is so far away that by the exercise of reasonable care it might have been stopped before reaching the place of the crossing where the circumstances of the case render such a charge appropriate."

We are not unmindful of the contention made by the plaintiff in error as to the finding of the court on the rehearing of said case, but the Supreme Court held that the instruction given to the jury on the alleged negligence of the traction company and that of the decedent was a correct statement of the law.

Upon an examination of the facts in the case of *Drown* v. *Traction Co., supra,* we find the facts stated in that case to be entirely different from the facts stated in the case at bar. Here it is admitted that the motorman plainly saw said horse and carriage at all times from the time said car reached the top of said elevation to the time it descended said elevation and reached said crossing, and likewise saw, or by the exercise of ordinary care could have seen, the peril of said decedent in said carriage, and neglecting and disregarding the rights of said decedent when upon said crossing in said carriage, carelessly and recklessly ran said car upon and against said horse and carriage, throwing said decedent out of said carriage and hurling his body some thirty feet and more distant, resulting in his death, while the former case involved a charge of negligence by the traction company for a violation of a city ordinance in failing

to give warning of the approach of one of its cars on its tracks to one driving on such tracks *in a street* going in the same direction as said car. It was not in any sense a street crossing case and the holding made was made with reference to the particular facts in said case. In the matter of the elements of negligence laid as the basis of said actions, we are of the opinion that the cases are essentially different, and we are further of the opinion that the instruction given by the trial court to the jury was proper, that it contained a correct statement of the law as applied to the facts in the case, and that it fairly and impartially presented said case under the issues to the jury.

We have examined the other specifications of error in said petition in error and find no such error in the record as justifies a reversal of the judgment of the court below.

Upon an examination of the entire record, notwithstanding the errors complained of, we are unanimously of the opinion that the case is one in which substantial justice has been done between the parties hereto, that no substantial right of the plaintiff in error has been prejudicially affected by the judgment herein and that said judgment ought to be and the same is affirmed, at the costs of the plaintiff in error. Said case will be remanded for execution. Exceptions may be noted.